# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, ex rel. DAVE YOST ATTORNEY GENERAL OF OHIO | |
| | Civil Action No. _____ |
| *Plaintiff,* | |
| v. | Removed from: |
| ASCENT HEALTH SERVICES LLC; EXPRESS SCRIPTS, INC.; CIGNA GROUP; EVERNORTH HEALTH, INC.; PRIME THERAPEUTICS LLC; HUMANA PHARMACY SOLUTIONS, INC.; HUMANA INC. | Case No. 23-CV-H-03-0179 Court of Common Pleas for Delaware County, Ohio |
| *Defendants.* | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C §§ 1331, 1441, 1442 and 1446,

Defendants Ascent Health Services LLC, Express Scripts, Inc., The Cigna Group, Evernorth

Health, Inc., Prime Therapeutics LLC, Humana Pharmacy Solutions, Inc., and Humana Inc.

hereby give notice of removal of this action from the Court of Common Pleas for Delaware

County, captioned *State of Ohio, ex rel. Dave Yost Attorney General of Ohio v. Ascent Health

Services LLC, et al*., bearing case number 23-CV-H-03-0179 (the "Action").

1

## INTRODUCTION

1.      This Action is a broad attack on the business practices of Defendant pharmacy benefit managers ("PBMs") for allegedly "enrich[ing] themselves," supposedly "all at the expense of consumers and other industry participants," including through their alleged "rebate" and drug "formulary" practices and conduct allegedly intended to "hurt competing pharmacies." Complaint ("Compl.") ¶¶ 2–11, 146.[1]  While the Complaint's allegations are wildly misguided and will be vigorously contested at the appropriate time, many of the allegations directly challenge actions Defendants Express Scripts, Inc., Evernorth Health, Inc., and Prime Therapeutics LLC (collectively, "Removing Defendants") are required to provide and perform at the direction and supervision of, and pursuant to contracts with, the federal government. Accordingly, federal officer removal is appropriate.

2.      Removal is warranted under 28 U.S.C. § 1442(a)(1) (the "Federal Officer Removal Statute") based on the Removing Defendants' roles as providers of PBM and pharmacy services to (1) the Department of Defense's health care program, TRICARE, and (2) health plans participating in the Federal Employee Health Benefits Program, administered and overseen by the U.S. Office of Personnel Management.

3.      Federal courts have repeatedly held—including in numerous cases involving the Removing Defendants—that providers of PBM services can remove actions under the Federal Officer Removal Statute based on their involvement in providing PBM services to federal employees under detailed government contracts.  *See Grider Drug, LLC v. Express Scripts, Inc.*, 500 F. App'x 402, 404 (6th Cir. 2012) ("The action was properly removed to federal court by Express Scripts."); *Cty. Bd. Of Arlington Cty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d

---

[1] As required by 28 U.S.C. § 1446(a), "all process, pleadings, and orders" served on the Removing Defendants in the Action below, including the operative Complaint, are attached hereto as Exhibit A.

243, 257 (4th Cir. 2021) (reversing district court because "removal under the federal officer removal statute was appropriate"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023) (denying motions to remand); *see also Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16-cv-211, 2017 WL 653270, at *6 (N.D.W. Va. Feb. 16, 2017) ("Humana [Inc.'s health plan subsidiary] is entitled to take advantage of the federal officer removal statute in this case.").

4.      The same is true here.  The Removing Defendants (1) are "person[s] acting under" a federal officer, (2) have been sued for conduct that relates to an act under color of office, and (3) have colorable federal defenses, including the government contractor defense and preemption based on federal statutes and regulations governing the TRICARE military healthcare program, *see, e.g.,* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074(g); 32 C.F.R. §§ 199.17, 199.21, and the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914.  *See generally Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 858 (6th Cir. 2023) (quoting *Nappier v. Snyder*, 728 F. App'x 571, 574 (6th Cir. 2018) (outlining required elements for federal officer removal)); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (same). Therefore, removal of this Action under the Federal Officer Removal Statute is proper.

## NATURE OF THE REMOVED ACTION

5.      On March 27, 2023, the State of Ohio, acting through its Attorney General ("Plaintiff"), filed this Action in the Court of Common Pleas for Delaware County, Ohio (the "State Court").  The Action was designated for identification at the State Court level as Civil Action No. 23-CV-H-03-0179.

6.      The Complaint names the following defendants: Ascent Health Services, LLC; Express Scripts, Inc.; The Cigna Group; Evernorth Health, Inc.; Prime Therapeutics LLC.; Humana Pharmacy Solutions, Inc.; and Humana Inc.[2]

**A.  Defendants**

7.      Ascent Health Services, LLC, The Cigna Group, Humana Pharmacy Solutions, Inc., and Humana Inc. join this Notice of Removal on the basis of the Federal Officer Removal Statute.  As detailed below, because the Removing Defendants may properly remove this case pursuant to 28 U.S.C. § 1442(a)(1), the entire Action should be removed, including all claims against all other Defendants, including Ascent Health Services, LLC, The Cigna Group, Humana Pharmacy Solutions, Inc., and Humana Inc.  *See Baker v. Atlantic Richfield Co.,* 962 F. 3d 937, 945 (7th Cir. 2020); *Morgan v. Huntington Ingalls, Inc.,* 879 F. 3d 602, 606 (5th Cir. 2018); *see also* 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3726 (Rev. 4th ed. 2023).

> ### i.      *The Express Scripts Defendants*

8.      Express Scripts, Inc. and Evernorth Health, Inc. (collectively, "Express Scripts" or the "Express Scripts Defendants") provide PBM services, including retail pharmacy network services, and administer the mail-order pharmacy for the Department of Defense's ("DOD") health care program, TRICARE, pursuant to a detailed contract issued and administered by the Defense Health Agency ("DHA"), a component of DOD.

---

[2] Per Consents to Plead filed in the State Court, Defendants are due to respond to the Complaint on or before May 24, 2023.  *See* Exhibit A.

9.     TRICARE, one of Express Scripts' largest and most important clients, provides health and pharmacy benefits "for approximately 9.5 million active duty and retired members of the Uniformed Services, and their spouses and children."[3]

10.     A significant portion of TRICARE beneficiaries live in Ohio.  The U.S. Department of Veterans Affairs, for instance, found that 774,935 veterans were residing in Ohio in 2017, the sixth most of any state; nearly one in ten Ohioans is a veteran.[4]  Many of those beneficiaries, including those in Ohio, depend on TRICARE for their prescription drugs, including the insulin, biologic, and cancer-fighting drugs highlighted in the Complaint.  *See* Compl. ¶ 7.

11.     Express Scripts has proudly provided PBM and pharmacy services for TRICARE beneficiaries for two decades.  Since 2003, Express Scripts has operated the TRICARE Home Delivery/Mail Order Pharmacy ("TMOP"), helping DOD meet its statutory obligation to deliver certain prescription medications directly to TRICARE beneficiaries by mail.  *See* 10 U.S.C. § 1074g(a)(9)(A); 32 C.F.R. § 199.21(h)(iv).  In subsequent years, DOD has elected to renew and expand its relationship with Express Scripts, adding retail pharmacy network and specialty pharmacy services to the suite of services that DHA contracted for with Express Scripts in 2004 and 2009, respectively.  In 2021, DOD again extended its relationship with Express Scripts through 2029.

12.     Under its agreement with DOD, Express Scripts is directed to administer a formulary under DOD's direction, charge TRICARE beneficiaries copayments on the terms and

---

[3] *See* Exhibit B, a true and correct copy of the public contract between DOD and Express Scripts, Inc. with an effective date of July 13, 2020, Contract No. HT-9402-21-C-0007 (the "TRICARE Contract"), with certain redactions consistent with the Freedom of Information Act, at C.1.
[4] *See* U.S. Dep't of Veterans Affairs, State Summaries: Ohio, https://www.va.gov/vetdata/docs/SpecialReports/State_Summaries_Ohio.pdf.

in the amounts dictated by the government, apply prior authorization, step therapies, and other clinical review requirements under DOD direction, and dispense medications purchased by the United States at rates negotiated directly between the federal government and drug manufacturers.

13.     Express Scripts also provides PBM and pharmacy services to current federal employees and certain eligible retired federal workers under contracts with FEHBA plans.  As such, Express Scripts must comply with requirements set by the U.S. Office of Personnel Management ("OPM") and is subject to audit and other monitoring by the agency.  As with TRICARE, Express Scripts provides PBM and pharmacy services to a significant number of federal employees across the country, including individuals in Ohio.  According to a 2017 report from OPM, 2.64% of the federal civilian workforce, or 49,450 individuals, lived and worked in Ohio.  A further 74,556 Ohioans are classified as annuitants and would therefore be eligible to enroll in a FEHBA plan.[5]

### ii.     *Prime Therapeutics LLC*

14.     A substantial number of the Ohio citizens allegedly injured by the Removing Defendants' conduct are federal employees who received health care benefits through FEHBA plans.  *See* Compl. ¶¶ 42–43 (expressly sweeping in "PBM services" to "government programs in the State of Ohio").

15.     FEHBA "establishes a comprehensive program of health insurance for federal employees."  *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006).  A federal agency, OPM, is responsible for administering FEHBA plans.  5 U.S.C. § 8902(a).  As

---

[5] *See* U.S. Office of Personnel Mgmt., *Federal Civilian Employment* (Sept. 2017), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/federal-civilian-employment/ (last visited April 27, 2023).

authorized by the FEHBA, OPM contracts with private entities called "carriers" to manage day-to-day administration of FEHBA plans. *See id.*

16. Since 1960, OPM has contracted with the Blue Cross Blue Shield Association ("BCBSA") to help manage the "largest" FEHBA plan in the country—the nationwide BCBSA Service Benefit Plan. *See Empire HealthChoice*, 547 U.S. at 682–84.

17. "OPM enjoys a strong level of guidance and control over" the BCBSA Service Benefit Plan—"[a]t all times, the carrier is subject to OPM oversight, uniquely operates with the United States Treasury, submits to OPM's regulatory requirements, and ultimately answers to federal officers." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (quotation omitted).

18. OPM allows FEHBA carriers like BCBSA to contract with PBMs and delegate certain responsibilities to them, but OPM retains direct control and monitoring over those PBMs.

19. From "at least as early as December 2019 . . . through the present" (the "Relevant Time Period"), Compl. ¶ 227, BCBSA contracted with Prime Therapeutics LLC ("Prime"), a unique PBM collectively owned by 12 entities representing 19 non-profit Blue Cross Blue Shield entities, to provide certain PBM services to the BCBSA Service Benefit Plan, which includes a large number of federal employees in Ohio.

20. Specifically, Prime provided specialty drug pharmacy and other contracted-for PBM services, including services related to formularies and manufacturer payments.

21. As set forth below, OPM set detailed contractual provisions that Prime was required to follow. *See infra* ¶¶ 62–66. OPM also directly monitored, supervised, and audited Prime, also explained below.[6] *See infra* ¶ 69.

---

[6] *See, e.g.,* OPM Office of the Inspector General Office of Audits, Final Audit Report of Prime (Oct. 27, 2022), *available at* https://www.oversight.gov/sites/default/files/oig-reports/OPM/2022-SAG-0025.pdf.

22.     Under OPM's requirements and supervision, Prime provided PBM and specialty drug pharmacy services to over 100,000 FEHBA members in Ohio during the Relevant Time Period.  Indeed, Plaintiff admits Prime "engaged in the business of . . . providing PBM services to . . . government programs in the State of Ohio."  Compl. ¶ 43.

### iii.     *Humana Pharmacy Solutions, Inc. and Humana Inc.*

23.     Humana Inc. is the corporate parent of Humana Pharmacy Solutions, Inc., which is a wholly-owned PBM that administers the pharmacy benefit for Humana health insurance plans.

24.     Some of Humana Inc.'s health plan subsidiaries are Medicare Plan Sponsors, administering Medicare Advantage and Medicare Part D plans across the country.

### iv.     *Ascent Health Services, LLC*

25.     Ascent Health Services, LLC ("Ascent") is a group purchasing organization ("GPO") based in Switzerland.  Compl. ¶ 45.  The Cigna Group, through wholly-owned subsidiaries, owns a portion of the GPO as an LLC Member.  Prime is a minority owner of the GPO, along with The Kroger Co. ("Kroger"), which is an Ohio company.  Plaintiff has not named Kroger as a defendant in this Action.

26.     Express Scripts, Inc., Prime, and Kroger are also GPO participants.  Humana Pharmacy Solutions, Inc. has a current contract with Ascent as a participant in the GPO.

27.     For the GPO's participants, Ascent negotiates and contracts with pharmaceutical manufacturers regarding drug pricing, rebates, and other fees.

### v.     *The Cigna Group*

28.     The Cigna Group is the corporate parent of Evernorth Health, Inc. and Express Scripts, Inc.

## B. The Allegations in the Complaint

29.     In a rhetoric-heavy and scattershot complaint, Plaintiff has launched a full-throated attack on the PBM business model.  Refusing to confine itself to a single, much less internally consistent, theory of attack, on the one hand, the Complaint blames PBMs for drug prices being too high, Compl. ¶¶ 32, 196, while also blaming PBMs for shrinking margins faced by brick-and-mortar retail pharmacies because of "ever-decreasing reimbursement rates for pharmaceutical drugs" allegedly imposed by PBMs and because of increased competition for prescription orders from lower-cost mail-order pharmacies.  Compl. ¶¶ 8–9, 16.  The Complaint attacks PBMs for policies and practices that some PBMs allegedly use—from the use of step therapy and prior authorization to drug formularies—that help reduce the cost of prescription drugs for plan sponsors and insureds and/or discourage the use of costly drugs with limited clinical benefit.  Compl. ¶¶ 54–60, 103–20, 196–97, 231.

30.     Plaintiff alleges that the defendants have conspired through rebate systems that pushes drug manufacturers to increase drug prices in exchange for preferred placement on PBM formularies.  Plaintiff also complains that pharmacies are "force[d]" to accept PBM reimbursement rates via "one-sided contracts" that sometimes include broad audit rights and provisions allowing "claw back" of reimbursements paid to pharmacies.  Compl. ¶¶ 3, 14, 16, 20–25.  Plaintiff argues that these "one-sided agreements" have driven retail, community pharmacies out of business, diverting customers to certain mail-order pharmacies.  Compl. ¶¶ 21, 144–47.

31.     Plaintiff claims that Express Scripts "demands" rebates from drug manufacturers and that these rebates are tied to a list price that brings payments into the PBM "black box" instead of getting passed on to consumers.  Compl. ¶ 15.

32.     Plaintiff also claims that Express Scripts formed a GPO—Ascent—in 2019, so Express Scripts could "coordinate pricing and other activities with its competitors."  Compl. ¶ 6, 26–29.  The Complaint alleges that Express Scripts owns the majority of the Ascent GPO, although Defendant Prime, as well as an Ohio entity, Kroger, which Plaintiff chose not to name as a defendant, are also LLC Members.  *Id.* ¶¶ 7, 26.

33.     The Complaint asserts seven causes of action, including an allegation that Defendants "engaged in a combination of capital, skill, or acts to create or carry out restrictions in trade or commerce or to fix and raise prices of numerous drugs, including but not limited to insulin" in violation of the Valentine Act.  *See* Compl. ¶¶ 203–13 (Express Scripts, Cigna, and Evernorth); Compl. ¶¶ 214–24 (Prime); Compl. ¶¶ 225–38 (all Defendants).

34.     The Complaint also alleges (1) Express Scripts "knowingly and willfully made repeated misrepresentations" and "false statements" to plan sponsors regarding their PBM services, in violation of Ohio's Deceptive Trade Practices Act; (2) all the Defendants engaged in a civil conspiracy; and (3) a claim of unjust enrichment due to all the Defendants' alleged combination and conspiracy.  *See* Compl. ¶¶ 239–47 (deceptive trade practices); Compl. ¶¶ 254–56 (unjust enrichment); Compl. ¶¶ 257–60 (civil conspiracy).

35.     Plaintiff also seeks a declaratory judgment that Express Scripts' alleged retroactive adjustments of pharmacy claims for reimbursement and fees charged to retail pharmacies constitute violations of Sections 3959.20(C)(1) and (2) of the Ohio Revised Code and an injunction preventing such clawbacks, as well as forfeiture in the amount of $500 per day from each Defendant for each Valentine Act violation pursuant to Section 1331.03 of the Ohio Revised Code, disgorgement of any ill-gotten proceeds, and attorneys' fees and costs.  *See* Compl. ¶¶ 248–53, 260.

## VENUE AND JURISDICTION

36. Venue is proper in this Court pursuant to 28 U.S.C. §§ 115, 1391, 1441(a), 1442 because the Court of Common Pleas for Delaware County, Ohio, where the Complaint was filed, is a state court within the Southern District of Ohio.

37. This Court has subject matter jurisdiction under 28 U.S.C. §1442(a) and §1446(a) because this case was properly removed under the Federal Officer Removal Statute.

## GROUNDS FOR REMOVAL

38. Removing Defendants are entitled to remove this Action based on the Federal Officer Removal Statute. Any person "acting under" a federal officer who is sued "for or relating to any act under color of such office," may remove to federal court. 28 U.S.C. § 1442(a)(1). Removing Defendants are "persons" under the Federal Officer Removal Statute because "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals" are included in the definition of "persons." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 n.8 (6th Cir. 2010).

39. A party seeking removal under the Federal Officer Removal Statute must show: "(1) it is a person who acted under the direction of a federal officer; (2) the actions for which it is being sued were performed under the color of federal office; and (3) there is a colorable federal defense to the plaintiff's claims." *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064, 1069–70 (N.D. Ohio 2018); *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 858 (6th Cir. 2023) (same); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (same).

40. According to the United States Supreme Court, the Federal Officer Removal Statute must be "liberally construed." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).

41. The Sixth Circuit likewise emphasizes "the broad scope of the federal officer removal statute" and recognizes that removing defendants are "entitled to a liberal construction in favor of removal." *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1069 n.2 (citing *Bennett*, 607 F.3d at 1084)).

42. Successful removal by a party under the Federal Officer Removal Statute removes the entire case. *See* 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3726 (Rev. 4th ed. 2023) ("Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction."); *see also Baker v. Atl. Richfield Co.,* 962 F. 3d 937, 945 (7th Cir. 2020) ("removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case"); *Morgan v. Huntington Ingalls, Inc.,* 879 F. 3d 602, 606 (5th Cir. 2018) ("If the case is removable by Avondale, the entire case will be deemed removable, such that Morgan's claims against all other defendants, including Murphy Oil, will be heard in federal court as well."). This is unlike other removal statutes where consent of all parties is required to remove the case. *See, e.g.*, 28 U.S.C. 1446(b)(2)(A).

**A. Removing Defendants are "Persons Acting Under" a Federal Officer**

43. A private contractor is acting under a federal officer when it is "directed by a federal officer, pursuant to a legal obligation to perform a task that otherwise the government would be required to do," including "helping or assisting a federal officer . . . beyond simple compliance with the law and help[ing] officers fulfill other basic governmental tasks." *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. at 1075-76 (internal citations omitted); *see also Bennett*, 607 F.3d at 1088 (concluding that defendant was acting under a federal officer where, if

not for the contract between the government and defendant, the government "itself would have had to perform" the task).

44.     Although privity is not required to establish that a person was "acting under" a federal officer, *Doe* v. *ProMedica Health Sys., Inc*., No. 3:20-cv-1581, 2020 WL 7705713, at *2 (N.D. Ohio Dec. 14, 2020), agreements with extremely detailed requirements and provisions for ongoing oversight by government officials greatly increases the likelihood that a federal contractor is "acting under" a federal officer, as opposed to simply selling an off-the-shelf product.  *See, e.g., Bennett*, 607 F.3d at 1087  (noting that "contracts [between FAA and corporation seeking to remove] included precise specifications"); *Lind v. Ne. Ohio Corr. Ctr*., No. 4:21-cv-2165, 2022 WL 429453, at *1 (N.D. Ohio Jan. 27, 2022) (noting that private correctional facility had a contract with the U.S. Department of Justice containing detailed provisions on housing and medical care, was "closely monitored" by relevant federal agencies, and was required to "meet a variety of specifications both in the contract and as part of [DOJ's] Federal Performance-Based Detention Standards"); *cf. In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1071 (removal appropriate even though "McKesson does not need to fill pharmaceutical orders under the close scrutiny of the VA contracting officer because the PPV Contract provides recourse in the event the government is not satisfied," demonstrating that "McKesson's actions are heavily monitored and regulated").

45.     Consistent with the Supreme Court's instruction that the statute be "liberally construed," *Watson*, 551 U.S. at 147, federal appellate courts recognize a broad range of federal contractors who satisfy the statute's "acting under" prong.  *See, e.g., Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (holding private manufacturer was acting under federal officer in manufacturing under military contracts); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d

1135, 1142 (11th Cir. 2017) (holding rural electric cooperative satisfied statute stating "[t]he phrase 'acting under' is broad and thus we 'liberally construe' this portion of § 1442(a)(1)"); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding manufacturer that supplied turbines to U.S. Navy satisfied statute, stating it "liberally construe[s]" the term "acted under"); *see also Johnson v. Tyson Foods, Inc.*, No. 21-cv-01161, 2021 WL 5107723, at *4 (W.D. Tenn. Nov. 3, 2021) (meat processing company sued by employee unwilling to comply with COVID-19 vaccine mandate could remove under 28 U.S.C. § 1442 because of national emergency declaration designating company as "critical infrastructure," which required company to "act[] under the directions of federal officials") (internal citation and quotations omitted).

46.     The relevant time for evaluating the "acting under" prong is "the time [at which the defendant] engaged in the acts underlying the Plaintiffs' lawsuit." *Thompson v. Cmty. Ins. Co.*, No. C-3-98-323, 1999 U.S. Dist. LEXIS 21725, at *19 (S.D. Ohio Mar. 3, 1999); *see also In re MTBE Prods. Liability Litig.*, 488 F.3d 112, 124–25 (2d Cir. 2007) ("Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon.").  In this case, Plaintiff challenges the Removing Defendants' conduct "at least as early as December 2019 . . . through the present."  Compl. ¶ 227.

### i.     Express Scripts Defendants are "Persons Acting Under" a Federal Officer

47.     Express Scripts was and is acting under a federal officer.  As noted above, DOD has contracted with Express Scripts for PBM and pharmacy services for the TRICARE health care program.  Additionally, subject to requirements set by OPM, Express Scripts provides PBM and pharmacy services to FEHBA plans.

48.     Multiple federal courts, including in the Sixth Circuit, have concluded that Express Scripts' involvement with the TRICARE program satisfies the "acting under" prong of

28 U.S.C. § 1442(a)(1).  *See* Order on Motion to Remand, *Grider Drug, LLC* v. *Express Scripts, Inc.*, No. 1:09-cv-00095, Dkt. No. 32, at 6 (W.D. Ky. October 18, 2009), *aff'd*, 500 F. App'x 402, 404 (6th Cir. 2012); *see also Cty. Bd. of Arlington Cty.*, 996 F.3d 243, 254 (4th Cir. 2021); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023).

49.     With respect to the TRICARE program, DOD is required by law to enter into contracts for the provision of healthcare services to TRICARE members.  *See* 10 U.S.C. § 1073a. Congress also has required the Secretary of Defense to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE.  10 U.S.C. § 1074g(a)(1).  The DOD entered into such contracts with Express Scripts to provide pharmacy benefits to members of the DOD TRICARE health care program across the country, including Ohio, in order to satisfy these Congressional mandates.  *See In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *2 ("The DoD has a statutory mandate to provide health care to military members and their families . . . . The DoD fulfills this responsibility by contracting with private entities, including the Express Scripts Defendants, to provide pharmacy benefit management and mail-order pharmacy services for federal employees.") (internal citation omitted).

50.     "The contract between the DoD and ESI is substantial—the DoD is ESI's second largest client . . . memorialized in a lengthy . . . Statement of Work."  *Id.* at *2-3.  The TRICARE Contract, *see* Exhibit B, "contains detailed requirements" that Express Scripts must comply with when delivering PBM and mail-order pharmacy services under the contract, including regarding "price[s], eligibility verification, shipping time, and shipping accuracy of pharmaceuticals."  *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *3.  "Importantly, the ESI Defendants are required to comply with all of these contractual requirements along with the statutes,

regulations and policy manuals governing the TRICARE program." *Cty. Bd. of Arlington*, 996 F.3d at 252.

51.     In addition to these covenants, Express Scripts is subject to significant and ongoing supervision by DOD and DHA officials.  Indeed, DOD dictates nearly every single aspect of Express Scripts' responsibilities in supporting TRICARE.  The TRICARE Contract requires the use of the "DoD Uniform Formulary," a tiered cost-sharing structure, and a preference for generic over branded products.  *See* Exhibit B at C.1, C.2.8.3.

52.     These requirements are mandated by Congress.  10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee").  Congress not only requires cost-sharing that favors generics, but it spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

53.     It is abundantly clear that, despite its extensive role in supporting TRICARE's pharmacy benefit, Express Scripts has limited autonomy under the contract, acting at all times under DOD supervision and direction.  *Cty. Bd. of Arlington*, 996 F.3d at 252–54 ("The DOD contract . . . made [Express Scripts] directly accountable to the federal government [and]…shall be subject to Contractor desktop audits and, if necessary, on-site audits at the direction of the government").  Express Scripts "helps the DoD acquire, deliver, and distribute prescriptions to beneficiaries" and "assists by providing the retail pharmacy network and acting as a fiscal intermediary."  Order on Motion to Remand, *Grider Drug, LLC v. Express Scripts, Inc.*, No. 1:09-cv-00095, Dkt. No. 32, at 5 (W.D. Ky. October 18, 2009), *aff'd*, 500 F. App'x 402, 404 (6th Cir. 2012).  But ultimately, "[t]he administration of the TRICARE program is the responsibility of the Secretary [of Defense]."  *Id.*

54.     In light of DOD's relationship with Express Scripts, the trial court in *Grider Drug, LLC v. Express Scripts, Inc.* concluded that "when executing its duties under this contract ESI is 'acting under' the Secretary of the DoD because it is performing a job that the DoD otherwise would have to perform."  *Id.*; *see also Grider*, 500 F. App'x 402, 404 (6th Cir. 2012) ("The action was properly removed to federal court by Express Scripts.").

55.     Similarly, the Fourth Circuit recently observed that "[t]aken as a whole, the ESI Defendants, by operating the TMOP [TRICARE mail-order pharmacy], were carrying out the duties of DOD by operating the TMOP and were, at all times, subject to the federal government's guidance and control," such that the "ESI Defendants were essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program."  *Cty. Bd. of Arlington*, 996 F.3d at 253–54.  The appellate court, reversing the court below, concluded that Express Scripts'

"'unusually close relationship [with DOD] involving detailed regulation, monitoring, or supervision' [was] sufficient to satisfy the 'acting under' requirement." *Id.*

56.     In addition to its role supporting the TRICARE program, Express Scripts also acts under a federal officer when it contracts with FEHBA plans to provide PBM and pharmacy services.

57.     Congress empowered OPM in the Federal Health Benefits Act of 1959, 5 U.S.C. § 8901 *et seq.*, "to contract with private carriers for federal employees' health insurance." *Coventry Health Care of Mo. v. Nevils*, 581 U.S. 87, 89 (2017).  As one such provider, Express Scripts is subject to OPM's requirements, oversight, and control in administering and supporting these plans, including specific regulations OPM established to govern PBM providers.  *See* 48 C.F.R. § 1602.170-16(a); 48 C.F.R. § 1604.7201(a); 48 C.F.R. § 1652.204-74(a); 48 C.F.R. § 1652.204-70; 48 C.F.R. § 1652.246-70.

58.     For example, OPM maintains the rights to audit Express Scripts' books and records, as well as the physical premises where Express Scripts performs work.  And OPM exercises these rights.[7]  These audits include reviews of the quarterly rebate guarantees, annual reconciliation and payments, actual billing and allocation of rebates, administrative fees, claim payments, fraud and abuse standards, performance guarantees, and pharmacy rebates, and even include site visits.

---

[7] *See e.g.*, Report No. 1H-02-00-18-018, Limited Scope Audit of the Govt' Employees Health Assoc.'s Drug Manufacturer Rebates as Administered by Express Scripts, Inc. for Contract Years 2013 and 2014 (Oct. 18, 2018), *available at* https://oig.opm.gov/reports/audit/limited-scope-audit-government-employees-health-associations-drug-manufacturer (last visited April 17, 2023),; Report No. 1H-06-00-17-026, Audit of the Compass Rose Health Plan's Pharmacy Operations as Administered by ESI for Contract Years 2012 through 2015 (Aug. 16, 2018) ("OPM '026 Audit"). https://www.oversight.gov/sites/default/files/oig-reports/audit-of-the-compass-rose-health-plan%E2%80%99s-pharmacy-operations-as-administered-by-express-scripts-inc-for-contract-years-2012-through-2015.pdf  (last visited April 17, 2023).

59. Thus, Express Scripts acts under the direction of a federal officer when it provides PBM and pharmacy services for federal employees. *See Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, 2005 WL 6717869, at *1–2 (11th Cir. Mar. 18, 2005) (upholding federal officer removal because a health insurer contracting with a government agency under a federal benefits program is a person "acting under" a federal officer); *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 355–56 (5th Cir. 2019) (considering "OPM's role in providing health care to federal employees" under the FEHBA and concluding that the removing Blue Cross entities had satisfied the "acting under" requirement of the Federal Officer Removal Statute); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234–35 (8th Cir. 2012) (holding that the federal government delegated provision of health insurance benefits and finding that removal was proper); *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017) (allowing removal where government had delegated responsibility to defendants to make subrogation claims on government's behalf); *Doe* v. *ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *2–3 (N.D. Ohio Oct. 30, 2020) (successful removal by defendant that "created the electronic-health-record patient portal primarily to assist the federal government in its mission for a nationwide system of electronic health records"); *cf. Clio Convalescent Ctr. v. Mich. Dept. of Consumer and Indus. Servs.*, 66 F. Supp.2d 875, 876 (E.D. Mich. 1999) (state agency charged with ensuring compliance with federal certification requirements for Michigan nursing homes could invoke federal officer removal statute).

### ii. Prime is a "Person Acting Under" a Federal Officer

60. Prime was "acting under" a federal officer when it engaged in conduct challenged by Plaintiff because, as discussed above, Prime was providing PBM services to FEHBA

members (including FEHBA members in Ohio) at the direction and supervision of OPM, a

federal agency.[8]

61.     FEHBA "establishes a comprehensive program of health insurance for federal

employees." *Empire HealthChoice*, 547 U.S. at 682.  FEHBA "assigns to OPM broad

administrative and rulemaking authority over the program," *Coventry Health Care of Mo., Inc. v.

Nevils*, 137 S. Ct. 1190, 1195 (2017) (citing 5 U.S.C. §§ 8901–8913), and directs OPM to

contract with private entities called "carriers" to manage day-to-day administration of FEHBA

plans, 5 U.S.C. § 8902(a).

62.     OPM contractually requires that FEHBA carriers include in any contract with a

PBM provisions relating to formularies and manufacturer payments.[9]

63.     Among other requirements, OPM contractually requires FEHBA carriers to

include in contracts with PBMs provisions that:

- Require the PBM to provide quarterly and annual reports regarding "Manufacturer Payments" negotiated or collected from drug manufacturers, including payments "in return for formulary placement and/or access" (FEHB Standard Carrier Contract at I-18–19);

- Require the "PBM [to] agree[] to provide pass-through transparent pricing based on the PBM's cost for drugs (as described below) in which the Carrier receives the value of the PBM's negotiated discounts, rebates, credits or other financial benefits" (*id.*); and

- Require "[t]he PBM [to] agrees to credit to the Carrier either as a price reduction or by cash refund the value [of] all Manufacturer Payments properly allocated to the Carrier" (*id.*).

---

[8] As explained, the Relevant Time Period for evaluating the "acting under" prong is approximately "December 2019 . . . through the present" (Compl. ¶ 227), the time at which Prime allegedly "engaged in the acts underlying the Plaintiffs' lawsuit," *Thompson*, 1999 U.S. Dist. LEXIS 21725, at *19.

[9] *See* OPM, Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers, at I-19 (2019) ("FEHBA Standard Carrier Contract"), *available at* https://www.opm.gov/healthcare-insurance/healthcare/carriers/experience-rated.doc (last visited April 25, 2023).

64. Subject to these requirements, rebate amounts negotiated by PBMs and credited to the FEHBA carrier reduce the amounts paid by the federal government for FEHBA benefits. *See St. Charles Surgical Hosp.*, 935 F.3d at 356 ("The funds are not owned by Blue Cross—OPM owns the funds, and OPM decides how to use any excess monies. Blue Cross never takes on the risks of an insurer in its relationship with OPM.").

65. OPM also contractually requires FEHBA carriers to agree to provisions that give OPM direct oversight and supervision of PBMs.[10]

66. Among other requirements, OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that:

- Require that the "PBM must identify sources of profit to the Carrier and OPM as it relates to the FEHB contract" (*id.*);

- Require the PBM to provide OPM upon request "[a]ll PBM contracts with Pharmaceutical Manufacturers," "[a]ll PBM contracts with Participating Pharmacies," "[a]ll PBM Maximum Allowable Cost (MAC) price lists," among other things (*id.*); and

- Give OPM the contractual "right to review and receive any information and/or documents the Carrier receives from the PBM, including a copy of its contract with the PBM" (*id.*).

67. During the Relevant Time Period, Prime had contracts with a FEHBA carrier, BCBSA, under which it provided certain delegated PBM and pharmacy services to the BCBSA Service Benefit Plan.

68. In that role, Prime was subject to all the above requirements imposed by OPM.

69. In 2022, OPM audited Prime's PBM services to the BCBSA Service Benefit Plan for years 2018 through 2021.[11] OPM's audit of Prime included a "review of the administrative

---

[10] *See* FEHB Standard Carrier Contract at I-19.
[11] *See* OPM Office of the Inspector General Office of Audits, Final Audit Report (Oct. 27, 2022), available at https://www.oversight.gov/sites/default/files/oig-reports/OPM/2022-SAG-0025.pdf (last visited April 25, 2023).

fees, annual accounting statements, claims processing (including eligibility and pricing), drug manufacturer rebates, fraud and abuse program, and performance guarantees."[12] OPM ultimately concluded Prime provided its PBM services in "accordance with the terms of the" applicable contracts "and applicable Federal regulations."[13]

70.     In sum, Prime was "acting under" a federal officer during the Relevant Time Period when it provided PBM to services to FEHBA members (including FEHBA members in Ohio) under the direction and supervision of OPM.  Indeed, courts routinely hold that entities administering the BCBSA Service Benefit Plan are "acting under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1) because "OPM enjoys a strong level of guidance and control over" the plan such that the entities administering the plan "ultimately answer[] to federal officers."  *St. Charles Surgical Hosp.*, 935 F.3d at 356; *see also Goncalves*, 865 F.3d 1237 (Blue Cross Blue Shield entity administering the Blue Cross Blue Shield Association's Service Benefit Plan properly invoked 28 U.S.C. § 1442(a)(1)); *Jacks*, 701 F.3d 1224 (same); *Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, at *2 (same); *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. 16-cv-5229, 2016 U.S. Dist. LEXIS 136244, at *10–17 (C.D. Cal. Sept. 30, 2016) (same); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1063–67 (S.D. Cal. 2016) (same); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 5:14-cv-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014) (same), *aff'd*, 823 F.3d 1198 (8th Cir. 2016); *Ala. Dental Ass'n, v. Blue Cross & Blue Shield of Ala., Inc.*, No. 2:05-cv-01230, 2007 U.S. Dist. LEXIS 685, at *21–25 (M.D. Ala. Jan. 3, 2007) (same).

---

[12] *Id.*
[13] *Id.*

**B. Removing Defendants' Alleged Conduct Relates to Conduct Under Color of Office**

71.     Under the Federal Officer Removal Statute's second prong, a removing defendant must show that the charged conduct was "for or relating to any act under color" of the federal office. 28 U.S.C. § 1442(a)(1) (emphasis added). In 2011, Congress amended the statute's language to "broaden the universe of acts that enable Federal officers to remove to Federal court." *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155, 2021 WL 5107725, at *4 (W.D. Tenn. Nov. 3, 2021) (citing H.R. Rep. No 112-17, pt. 1, at 6 (2011)). Where previously defendants could only remove suits "for" an act under color of office, the statute now permits removal of suits "for or relating to" any act under color of the federal office. An action, therefore, is removable under the statute "as long as they are 'connected' or 'associated' with federal directions." *Reed,* 2021 WL 5107725, at *4 (citing *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017)).

72.     "Federal jurisdiction cannot be avoided merely by careful or creative word-smithing. . . . [T]he dispositive question is whether the government directed a defendant to perform the acts for which it is being sued, not whether the complaint mentions the government contract." *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *65; *see also Cty. Bd. of Arlington*, 996 F.3d at 256 ("Arlington . . . . argues that its Amended Complaint did not even mention the distribution of opioids to veterans, the DOD contract or the operation of the [TRICARE mail-order pharmacy]. Its allegations, according to Arlington, have nothing to do with DOD or its program. But Arlington's position would elevate form over substance.").

73.     Removing Defendants satisfy this requirement for removal because the alleged conduct in the Complaint relates to acts under color of office, namely providing PBM and pharmacy services to (i) TRICARE beneficiaries pursuant to agreements with DOD and (ii) federal employees under contracts with FEHBA plans.

i.        **Express Scripts acts under color of office with respect to TRICARE**

74.      In this Action, Ohio's Attorney General alleges that the prices paid by its citizens—including hundreds of thousands of service members, veterans, and military dependents that call Ohio home—for drugs, including insulin products, are artificially inflated by a complex and sprawling series of alleged conspiracies by Defendants.  Many of the Ohio citizens allegedly injured by these conspiracies are TRICARE beneficiaries.  These individuals acquire pharmaceuticals, including insulin products and other medications, through the TRICARE program.

75.      The formularies that Express Scripts uses with respect to prescriptions filled for TRICARE beneficiaries, the prices paid to manufacturers and pharmacies on behalf of the federal government, decisions about which pharmacies may be in TRICARE's retail pharmacy network, the terms on which those pharmacies are paid, and the copayments Express Scripts must ensure that beneficiaries pay, and whether and when prior authorization may be required are all dictated by the Department of Defense and the TRICARE Contract.  *See, e.g.,* 32 C.F.R. § 199.21(i)(1) ("Cost-shares under this section partially defray government costs . . . for prescriptions dispensed through the retail network pharmacies or the TRICARE Mail Order Pharmacy . . . . based on the classification of a pharmaceutical agent as generic, formulary, or non-formulary, in conjunction with the point of service from which the agent is acquired.").

76.      Additionally, the Complaint alleges that Express Scripts purposefully tries to undermine retail pharmacies with one-sided contracts in order to divert consumers (many of whom are TRICARE members) to mail-order pharmacies operated by Express Scripts.  *See*, *e.g.*, Compl. ¶¶ 20–21.  The TRICARE Contract, of course, specifically charges Express Scripts with administering the mail-order portion of the TRICARE program on the government's behalf,

24

including in Ohio. In fact, *Congress*, not Express Scripts, requires TRICARE beneficiaries "generally to refill non-generic prescription maintenance medications through military treatment facility pharmacies or the national mail-order pharmacy program." 10 U.S.C. § 1074g(a)(9)(A). DOD regulations further provide:

> ". . . [F]or non-generic covered maintenance medications, beneficiaries are generally required to obtain their prescription through the national mail-order pharmacy program or through military treatment facility pharmacies. . . . (iv) Requests for a third fill at retail will result in 100% patient cost shares and will be blocked from any TRICARE payments and the beneficiary advised to call the pharmacy benefits manager (PBM) for assistance. (v) The PBM will provide a toll free number to assist beneficiaries in transferring their prescriptions from retail to the mail order program. With the beneficiary's permission, the PBM will contact the physician or other health care provider who prescribed the medication to assist in transferring the prescription to the mail order program."

32 C.F.R. §§ 199.21(r)(1); 199.21(r)(5)(iv–v).

77. Pursuant to its contract with DOD, Express Scripts operates TMOP, implements DOD's "Uniform Formulary" and any prior authorization or utilization review requirements set by the government, and provides other PBM services, including retail pharmacy network services, ensuring that TRICARE members have access to thousands of retail pharmacies in Ohio alone to process their prescriptions and that the United States is not overcharged by retail pharmacies. The arguments in the Complaint, including the alleged role of formulary placement in drug pricing and the use of "one-sided," "take-it-or-leave-it" contracts with retail pharmacies to drive customers towards using mail-order pharmacies, *see* Compl. ¶¶ 20–21, cannot be separated from the services provided under Express Scripts' DOD contract.

78. The Complaint seeks to punish Express Scripts, in part, for actions it performed *under the direction of the United States* pursuant to the TRICARE Contract, including the use of formularies, mail-order pharmacy practices, certain pharmacy payment and auditing practices, enforcing prior authorization requirements, and collecting copayments as required by the

beneficiary's plan. *Compare* Compl. ¶¶ 11, 123, 192, 196, 209, 220, 234, 256, 258 *with* 10

U.S.C. §§ 1074g(a)(7); 1074g(a)(9–10); 32 C.F.R. §§ 199.21(i)(1), 199.21(r)(1), 199.21(r)(5)(iv–

v). Plaintiff contends that these practices are all harmful. Although Express Scripts and the

other Removing Defendants strongly disagree with that contention, it is incontestable that

Express Scripts was obligated to engage in many of these practices in Ohio and elsewhere in its

role providing PBM services and administering TMOP on behalf of DOD.

### ii. Removing Defendants act under color of office with respect to FEHBA Plans

79.   Similarly, Removing Defendants provide PBM and pharmacy services under the

FEHBA contracts to federal employees and retirees enrolled in the Plans. *See* OPM '026 Audit,

at 3–8. As with TRICARE, many federal employees and retired federal workers based in Ohio

obtain life-saving pharmaceuticals using the pharmacy benefits associated with their FEHBA

plan. The prices of those drugs are determined, in part, by placement on a formulary that is

designed in compliance with OPM regulations and managed under OPM supervision. 5 U.S.C. §

8902. Moreover, those plans contain a range of other elements alleged to be harmful by Ohio's

Attorney General, including prior authorization requirements, copayments, mail-order pharmacy

services, and supposedly "onerous" payment and audit provisions for in-network retail

pharmacies. Compl. ¶¶ 152, 192–202.

80.   For instance, Prime's practices with regard to formularies and manufacturer

payments in connection with FEHBA plans are subject to a range of contractual and regulatory

requirements imposed by OPM. Plaintiff's claims in this case directly challenge those PBM

practices, including with regard to FEHBA plans in which Ohio residents participate. *See, e.g.*,

Compl. ¶ 7 (challenging how "Prime negotiate[s] with manufacturers"), ¶ 221 (alleging "Prime

Therapeutics . . . mischaracterize[ed] Rebates received in order to avoid passing those Rebates"

to the plans), ¶ 231 (challenging Prime's practice regarding "Formularies").

81.     There is a sufficiently pleaded connection between Plaintiff's allegations and

Removing Defendants' provision of PBM and pharmacy services to remove on this basis. *See*

*Cty. Bd. of Arlington*, 996 F.3d at 254; *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006,

at *6; Order on Motion to Remand, *Grider Drug, LLC*, No. 1:09-cv-00095, Dkt. No. 32, at 6

(W.D. Ky. October 18, 2009), *aff'd*, 500 F. App'x 402, 404 (6th Cir. 2012).

## C. Removing Defendants Have Colorable Federal Defenses

82.     The final element—the colorable-federal-defense prong—is subject to a low bar.

A defense need only be "plausible."  *Bennett*, 607 F.3d at 1089.  Because one of the purposes of

federal officer removal is to provide a federal forum for federal defenses, "[p]roof of a

'colorable' federal defense . . . does not require the defendant to 'win his case before he can have

it removed' nor even establish that the defense is 'clearly sustainable.'"  *Ripley v. Foster*

*Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016) (citing *Willingham v. Morgan*, 395 U.S. 402,

407 (1969)); *In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *8 ("[T]he ultimate

validity of the preemption defense is yet to be determined.  At this stage, however, the Express

Scripts Defendants have a colorable argument that the DoD contract preempts the Plaintiffs'

state law claims.").

83.     In this Action, the Removing Defendants can raise several colorable federal

defenses, thereby satisfying the third element required to remove to federal court under 28

U.S.C. § 1442(a)(1).

84.     Removing Defendants can raise the federal contractor defense, which applies

when "(1) the United States approved reasonably precise specifications; (2) the equipment

conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Ripley*, 841 F.3d at 210 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). The defense protects from "tort liability that arises as a result of the contractor's 'compliance with the specifications of a federal government contract.'" *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (citing *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)).

85.     Here, Removing Defendants were providing PBM and pharmacy services, including retail pharmacy network services, mail-order pharmacy services, and specialty pharmacy services to TRICARE beneficiaries and other federal employees under DOD and OPM's specific requirements and supervision. *See In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *7 ("In this case, the Express Scripts Defendants assisted the government by providing healthcare services pursuant to highly precise directives contained in a lengthy contract with the DoD.").

86.     Removing Defendants can also raise a preemption defense based on their roles providing PBM and pharmacy services pursuant to federal statutes and regulations governing the TRICARE military healthcare program and FEHBA.

87.     The TRICARE statutes provide the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts. *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074(g) (pharmacy benefits program). These statutes and accompanying federal regulations contain express preemption provisions. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense," to the extent the state law is inconsistent,

or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7)(iii). Accordingly, the terms of the TRICARE contract between DOD and Express Scripts would preempt any inconsistent state laws and preempt state claims that would interfere with implementation or administration of those contact terms or the TRICARE statutory scheme. *See In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *8 (holding that, with respect to their federal contractor and preemption defenses, the "Express Scripts Defendants have twice satisfied the third prong of the removal test and have earned the right to test the validity of their defenses in a federal forum."); Order on Motion to Remand, *Grider Drug, LLC v. Express Scripts, Inc.*, No. 1:09-cv-00095, Dkt. No. 32, at 6 (W.D. Ky. October 18, 2009) (finding Express Scripts' "official immunity, preemption, and conflict preemption" defenses to be colorable), *aff'd*, 500 F.App'x 402, 404 (6th Cir. 2012).

88.    FEHBA also supports a preemption defense because it provides the statutory authorization for OPM to enter into contracts with insurance carriers and to prescribe reasonable minimum standards for the plans and carriers, including those that relate to pharmacy benefits. *See* 5 U.S.C. § 8902(m)(1) (FEHBA displaces state law on issues relating to coverage or benefits afforded by healthcare plans.) Thus, any state law and claims that relate to coverage or benefits under FEHBA plans, such as the claims in this case, are preempted.

89.    The Federal Officer Removal Statute exists to address cases like the one at bar. Plaintiff's allegations and legal theories about the Defendant PBMs' conduct is inextricably linked to the federal programs discussed above and how those programs are designed, funded, administered, and overseen by the federal government. Removal is proper and appropriate.

## PROCEDURAL COMPLIANCE

90.     All procedural requirements for removal which apply under 28 U.S.C. § 1446 and this Court's Local Civil Rules have been satisfied.

### A.  Notice Is Timely

91.     This Notice of Removal is timely because it is filed within 30 days of the date of service of the Complaint on Defendants.  28 U.S.C. § 1446(b)(1).

### B.  All Defendants Consent To, And Co-Move For, Removal

92.     Although federal officer removal does not require co-defendants to consent to or join in the removal, *Hood v. Sec. Bank of Huntington*, 562 F. Supp. 749, 750 (S.D. Ohio 1983) ("Because a federal officer is the only person who can remove a case under section 1442(a)(1), the federal officer may remove even if the other defendants do not join the petition"), as co-movants, all Defendants consent and join this Notice of Removal on the basis of the Federal Officer Removal Statute.

### C.  All Other Procedural Requirements Are Satisfied

93.     In accordance with 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders" served on Defendants in the State Court Action are attached as Exhibit A.

94.     The Civil Cover Sheet, together with this Notice and its exhibits, has been filed with this Court.

95.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, Defendants will serve a copy of this Notice on Plaintiff and will file a copy of the Notice with the Clerk for the Court of Common Pleas in Delaware County, Ohio.

96. Nothing in this Notice should be interpreted as a waiver or relinquishment of any of Defendants' rights to assert any and all defenses or objections to the Complaint, including as to personal jurisdiction.

97. If there are any questions that arise as to the propriety of removal of this Action, Defendants respectfully request the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

98. Defendants reserve the right to amend or supplement this Notice.

## CONCLUSION

WHEREFORE, Defendants hereby remove this Action to this Court for further proceedings according to law.

Dated: April 27, 2023         Respectfully submitted,

RULE GARZA HOWLEY LLP       TAFT STETTINIUS & HOLLISTER LLP

Charles F. Rule*              */s/ David J. Butler*
Daniel J. Howley*            David J. Butler (0068455), Trial Attorney
Benjamin Z. Bergmann*       41 South High Street, Suite 1800
Erica N. Baum*              Columbus, Ohio 43215
1701 Pennsylvania Ave. NW, Suite 200   Telephone: (614) 221-2838
Washington, D.C. 20006        dbutler@taftlaw.com
Telephone: (202) 843-9280
rule@rulegarza.com          Jeanne M. Cors (0070660)
howley@rulegarza.com        425 Walnut Street, Suite 1800
bergmann@rulegarza.com      Cincinnati, Ohio 45202
baum@rulegarza.com         Telephone: (513) 381-2838
*(* pro hac vice motions forthcoming)*   cors@taftlaw.com

*Counsel for Ascent Health Services LLC, Express Scripts, Inc., The Cigna Group, and Evernorth Health, Inc.*

DORSEY & WHITNEY LLP        FLANNERY | GEORGALIS, LLC

Jaime Stilson*               Matthew L. Jalandoni (0087074)
Michael A. Lindsay*         Benjamin Reese (0096108)
Nicholas J. Bullard*         175 South Third St., Suite 1060
50 South Sixth Street, Suite 1500    Columbus, OH 43215

31

Minneapolis, MN 55402                    (380) 444-6027
(612) 340-2600                           mjalandoni@flannerygeorgalis.com
stilson.jaime@dorsey.com                 breese@flannerygeorgalis.com
lindsay.michael@dorsey.com
bullard.nick@dorsey.com
*(\* pro hac vice motions forthcoming)*

*Counsel for Prime Therapeutics LLC*

CROWELL & MORING LLP                     BRICKER GRAYDON LLP

Shawn R. Johnson*                        Anne Marie Sferra (0030855)
Justin D. Kingsolver*                    Sommer L. Sheely (0076071)
1001 Pennsylvania Ave. NW                100 South Third Street
Washington, DC 20004                     Columbus, OH 43215
(202) 624-2500                           (614) 227-2300
srjohnson@crowell.com                    asferra@brickergraydon.com
jkingsolver@crowell.com                  ssheely@brickergraydon.com

Jason C. Murray*
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
(213) 622-4750
jmurray@crowell.com
*(\* pro hac vice motions forthcoming)*

*Counsel for Humana Pharmacy Solutions, Inc. and Humana Inc.*

## <u>CERTFICATE OF SERVICE</u>

  The undersigned hereby certifies that on April 27, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system.  Parties may access this filing through the Court's system.

*/s/ David J. Butler*      
David J. Butler (0068455)
