UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, ex rel. DAVE YOST ATTORNEY GENERAL OF OHIO<br><br>*Plaintiff*,<br><br>v.<br><br>ASCENT HEALTH SERVICES LLC; EXPRESS SCRIPTS, INC.; CIGNA GROUP; EVERNORTH HEALTH, INC.; PRIME THERAPEUTICS LLC; HUMANA PHARMACY SOLUTIONS, INC.; HUMANA INC.<br><br>*Defendants*. | Civil Action No. 2:23-CV-1450<br><br>Judge Michael H. Watson<br>Magistrate Judge Chelsey M. Vascura |

**PLAINTIFF STATE OF OHIO'S MEMORANDUM IN OPPOSITION TO DEFENDANTS HUMANA INC. AND HUMANA PHARMACY SOLUTIONS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendants Humana Inc. and Humana Pharmacy Solutions, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Humana's Motion") should be denied. It is undisputed that Defendants Humana Inc. and Humana Pharmacy Solutions, Inc. (collectively, "Humana") control the pharmaceutical benefits for tens of thousands of Ohioans with commercial plans, and that Humana administers those pharmaceutical benefits in collaboration with Ascent Health Services LLC ("Ascent"), including by allowing Ascent to control rebate negotiations for those covered commercial lives. These actions are the very heart of Plaintiff's Complaint, and there is no question that the allegations in the Complaint, combined with Humana's admissions, demonstrate that this Court has personal jurisdiction over Humana.

Therefore, the Court should deny Humana's Motion.

**I.    The allegations in the Complaint and Humana's admissions demonstrate that Humana transacts business in Ohio.**

**A. Humana's admissions demonstrate that Humana operates in Ohio's commercial pharmacy benefits marketplace and that it collaborates with Ascent in those activities.**

In Humana's Motion, Humana admits the following:

1. Humana Inc. is a corporate parent of licensed insurance subsidiaries. Humana's Motion, ECF. No. 41, PageID 1500.

2. Humana Pharmacy Solutions, Inc. ("HPS") "builds and maintains networks of pharmacies, designs the prescription formulary for Humana insureds, and negotiates drug prices and discounts with pharmacies and manufacturers on behalf of Humana Inc.'s health plan subsidiaries." *Id*.

3. HPS contracts with Ascent "to negotiate certain rebates from drug manufacturers for prescriptions filled by HPS for Humana Inc.'s small commercial … lines of business." *Id*. This admission demonstrates both that Humana Inc. operates commercial lines of business and that HPS provides pharmacy benefit management services to those lines of business, including by contracting with Ascent related to those services.

4. A number of Humana entities are licensed to provide health insurance in Ohio. These include: Humana Health Plan Inc., Humana Health Plan of Ohio Inc., Humana Medical Plan of Michigan, Inc., Humana Wisconsin Health Organization Insurance Corporation, Humana Benefit Plan of Illinois, Inc., and Humana Insurance Company,  Humana's Motion, Ex. A(B), ECF No. 41-1, PageID 1677, 1691. All of these subsidiaries are identified on Humana's Subsidiary List. Humana's Motion, Ex. A(A), ECF No. 41-1, PageID 1660-1665.

5. Humana had more than 40,000 commercial members in Ohio. Humana's Motion, Ex. A(A), ECF No. 41-1, PageID 1522.[1] Based on Humana's description of its business, HPS provides pharmacy benefit management services on behalf of these tens of thousands of Ohioans, and it contracts with Ascent in connection with those same services.

---

[1] Humana's 10-K define "commercial" coverage to include fully-insured and administrative services only, or ASO, which "are offered to small group and large group employers who self-insure their employee health plans." Humana's Motion, Ex. A(A), ECF No. 41-1, PageID 1519. Humana estimates that it has 24,200 fully-insured commercial members in Ohio and 23,900 under ASO contracts. *Id*. at PageID 1522.

**B. Plaintiff's allegations pertain to Humana's actions regarding tens of thousands of Ohioans covered by Humana's commercial plans.**

As explained above, Humana does not dispute that it controls pharmaceutical benefits for tens of thousands of Ohioans covered by commercial plans and that HPS has a direct relationship with Ascent, on Humana Inc.'s behalf, for Ascent to control aspects of those benefits, including rebate negotiation.

Combined with that undisputed background, each of the specific allegations in the Complaint regarding how Humana's relationship with Ascent harms Ohioans demonstrates, taking those allegations as true, the pervasiveness of the combination and its harm:

1. Ascent allows Express Scripts to add millions of covered lives, including Humana's, to its bargaining leverage. Complaint, ¶ 186, ECF No. 12, PageID 1349.

2. Ascent allows pharmacy benefit managers with which it contracts, including HPS, "to consolidate their Rebate scheme and grant the PBMs even greater bargaining leverage, with the benefits flowing to the PBMs' bottom lines." *Id*. ¶ 181, ECF No. 12, PageID 1349.

3. Ascent allows PBMs, including HPS, "to obscure the fees contained in the black box by further complicating the web of relationships and adding additional layers to shield their behavior from customer and regulatory scrutiny." *Id*. ¶ 187, ECF No. 12, PageID 1350.

4. Ascent allows PBMs, including HPS, "to harmonize and increase drug prices, Rebates, fees, and Retail Pharmacy reimbursements." *Id*. ¶ 188, ECF No. 12, PageID 1350.

5. A "significant purpose" of the collaboration with Ascent is "to depress reimbursement rates paid to Retail Pharmacies and to increase the administrative fees charged to those pharmacies," including to pharmacies participating in Humana's network that serves its tens of thousands of Ohio commercial members. *Id*. ¶ 190, ECF No. 12, PageID 1350-51.

6. Humana's collusive conduct with the other Defendants harms Ohioans by:

    a. Denying Ohio patients "the benefits of free and unrestricted competition in the marketplace by suppressing the information and transparency that would allow meaningful comparisons among competing PBMs, and by forming and carrying out agreements with Manufacturers that have the

3

      purpose and effect of fixing and increasing the out-of-pocket prices these individuals must pay for their prescription drugs[.]" *Id*. ¶ 193, ECF No. 12, PageID 1351-52.

   b. Denying "Ohio Plan Sponsors the benefits of free and unrestricted competition in the marketplace by suppressing the information and transparency that would allow meaningful comparisons among competing PBMs, and by forming and carrying out agreements with Manufacturers that have the purpose and effect of fixing and increasing the quality-adjusted prices paid by Plan Sponsors." *Id*. ¶ 194, ECF No. 12, PageID 1352.

   c. Creating higher out-of-pocket obligations to Ohioans. *Id*. ¶ 195, ECF No. 12, PageID 1352.

   d. Colluding with other Defendants in creating a pay-to-play system for pharmaceutical benefits in Ohio. *Id*. ¶ 196, ECF No. 12, PageID 1352-53.

These and other allegations in the Complaint support the conclusion that Humana has colluded with Defendants relating to its commercial members in Ohio, causing harm not only to those members but also to the pharmaceutical industry in Ohio generally.

## II. The allegations in the Complaint and Humana's admissions demonstrate that this Court has personal jurisdiction over Humana.

### A. A plaintiff need make only a *prime facie* showing of personal jurisdiction.

Establishing specific personal jurisdiction over a defendant requires satisfying both Ohio's long-arm statute and demonstrating that jurisdiction satisfies due process concerns. *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019). "Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is 'relatively slight'; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a prima facie showing that personal jurisdiction exists." *Retail Serv. Sys. v. Mattress By Appointment, LLC*, 210 F. Supp. 3d 916, 923 (S.D. Ohio 2016).

4

First, the Plaintiff must make a prima facie "show[ing] that [Defendant] falls within Ohio's long-arm statute." *Spurlark v. Dimension Serv. Corp.*, No. 2:21-cv-3803, 2022 U.S. Dist. LEXIS 120468, 2022 WL 2528098, at *11 (S.D. Ohio Jul. 7, 2022). "A non-resident defendant need not have a physical presence in Ohio to be transacting business there." *Id*. at *12 (internal quotation marks omitted).

In addition, jurisdiction must comport with due process concerns. *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 768 (S.D. Ohio 2022). Due process allows specific personal jurisdiction when the defendant has had such "minimum contacts with the forum State such that he should reasonably anticipate being haled into court there." *Id*. at 772.

Here, Humana's operations easily pass these standards. First, Humana transacted business in Ohio (in the form of pharmacy benefit management services provided on behalf of Humana's commercial covered lives in Ohio). Second, Humana has sufficient minimum contacts with Ohio by actively registering entities to provide insurance coverage in Ohio and, through HPS, providing pharmacy benefit management services to those entities. Therefore, this Court properly has personal jurisdiction over Humana.

### B. Humana transacted business in Ohio.

In Ohio, personal jurisdiction is proper over a person regarding a cause of action that arises out of that person transacting business in the state. Ohio Rev. Code § 2307.382(A)(1). Humana transacted business (and continues to transact business) in Ohio in connection with the allegations in the Complaint by providing commercial coverage to Ohio residents and providing pharmacy benefit management services to those same commercial patients. Courts have identified three factors relevant to determining whether a non-resident defendant has transacted business in Ohio: (1) whether the non-resident defendant initiated the dealing; (2) whether the parties conducted their negotiations or discussions in the forum state; and (3) whether the non-

5

resident defendant manifested a substantial connection to Ohio. *Spurlark*, 2022 U.S. Dist. LEXIS 120468, at *12.

There is no question that Humana initiated the dealing at issue – HPS's provision of pharmacy benefit management services to Humana's commercial members. Humana registered a number of insurance providers in Ohio, and Humana controlled whether those insurance providers would be served by HPS. Further, HPS's operations necessarily involved contracting directly with Ohio pharmacies in managing its pharmacy network and negotiating pharmacy reimbursement rates.

Finally, throughout the period covered by the Complaint and continuing today, Humana has a substantial connection to Ohio by serving more than 40,000 Ohio commercial members and administering their pharmacy benefits, in connection with Humana subsidiaries registered to provide insurance in the State of Ohio. In *Ohio Valley Bank Co. v. Metabank*, No. 2:19-cv-191, 2019 U.S. Dist. LEXIS 160437, 2019 WL 4574528, at *13-14 (S.D. Ohio Sep. 20, 2019), this Court found that a defendant transacted business in Ohio for claims related to its nationwide tax processing services where the defendant was required to make regular payments to a bank in Ohio "and facilitated numerous transactions" in Ohio. The same is true here, where Humana Inc. and HPS make payments for pharmaceutical drugs to Ohio pharmacies on behalf of Ohio patients and facilitate numerous pharmaceutical transactions.

Even a cursory look at Humana's operations reveals that Humana "transacts business" in Ohio for the purposes of Ohio's long-arm statute. Therefore, Humana is subject to personal jurisdiction here.[2]

---

[2] Humana's own contacts with Ohio support personal jurisdiction. Therefore, Ascent's citizenship, or the citizenship of any other Defendant, is not relevant or necessary to the analysis.

### C. Alternatively, Humana is subject to this Court's jurisdiction based on other grounds under Ohio's long-arm statute.

Humana is also subject to personal jurisdiction under Ohio's long-arm statute for two additional and independent reasons.

First, Humana "[c]ontract[s] to supply services or goods in [Ohio]." Ohio Rev. Code § 2307.382(A)(2). As explained above, HPS provides pharmacy benefit management services to Humana's covered commercial lives in Ohio, and therefore, HPS necessarily contracts with Humana's Ohio-registered insurance providers, with plan sponsors, and with Ohio pharmacies pursuant to those services.

Second, the Complaint (ECF No. 12, PageID 1316) alleges that Humana caused "tortious injury in [Ohio] by an act or omission outside [Ohio]" and it is clear, from Humana's own admissions, that Humana "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." Ohio Rev. Code § 2307.382(A)(4). Humana provides medical insurance coverage and related services for tens of thousands of Ohioans covered by commercial plans, and HPS provides pharmacy benefit services for those same Ohioans.

Therefore, personal jurisdiction is also proper under subsections (A)(2) and (A)(4) of the Ohio long-arm statute.

### D. Due process allows personal jurisdiction over Humana in Ohio.

Moreover, Humana has minimum contacts with Ohio. To assess whether a defendant has minimum contacts with a forum, a court must examine three relevant criteria: (1) that the defendant "purposefully availed" itself to the "privilege of acting in the forum state or causing a consequence" in that state; (2) that the plaintiff's cause of action "arise[s] from" the defendant's activities within the state; and (3) that the defendant's activity manifests a "substantial enough

connection" to the state that renders "the exercise of jurisdiction over the defendant reasonable." *Olin-Marquez*, 586 F. Supp. 3d at 772. Each of these criteria supports jurisdiction here.

First, "'[p]urposeful availment' is 'the constitutional touchstone of personal jurisdiction,' and it exists 'where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State … and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.'" *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)). "[A] nonresident who deliberately engages in 'significant activities within a State' or creates 'continuing obligations between himself and residents of the forum' satisfies this requirement." *AlixPartners*, 836 F.3d at 550 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). Few obligations can be more "continuing" or "significant" than the ongoing management of Ohioans' pharmaceutical benefit plans.

Second, the causes of action in the Complaint arise from Humana's activities in Ohio – namely, Humana's collaboration with other Defendants (including Express Scripts and Ascent) to engage in anticompetitive practices in the commercial market, negatively affecting tens of thousands of individual Ohioans covered by Humana, as well as independent pharmacies in Ohio.

Third, the exercise of jurisdiction in Ohio is reasonable. As an initial matter, satisfying the first two factors supporting minimum contacts gives rise to an inference that jurisdiction is reasonable. *Int'l Confection Co., LLC v. Z Capital Grp., LLC*, No. 2:18-cv-1108, 2019 U.S. Dist. LEXIS 159257, 2019 WL 4452754, at *13 (S.D. Ohio Sep. 17, 2019). In addition, courts typically consider: "'(1) the burden on the defendant; (2) the interest of the forum state; (3) the

8

plaintiffs['] interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy.'" *Id*. (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005)).

Humana's Motion makes no argument regarding the latter factors, but they all support jurisdiction. Humana is present in Ohio, and its more than 40,000 commercial members is only a portion of that presence. Ohio has a strong interest, manifested through the Valentine Act, not only in preserving the integrity of its competitive markets but also in ensuring that vulnerable Ohioans are not exploited in connection with their healthcare. Finally, other states lack the same interest in enforcing Ohio law and protecting Ohio citizens.

Therefore, due process allows personal jurisdiction over Humana in Ohio, and Humana's Motion should be denied.

### III.   Conclusion.

For the reasons above, Humana's Motion should be denied, and this Court should conclude that Humana is subject to personal jurisdiction in the courts of Ohio.


Dated: June 30, 2023

        Respectfully submitted,

        DAVE YOST
        Ohio Attorney General (0056290)
        SHAWN BUSKEN (0083585)
        Deputy First Assistant Attorney General

        */s/ Jason W. Palmer*
        JENNIFER L. PRATT (0038916)
        Director of Major Litigation
        30 East Broad Street, 17th Floor
        Columbus, Ohio 43215
        Telephone: (614) 752-8237

Fax: (614) 466-5087
Jennifer.Pratt@OhioAGO.gov

Beth A. Finnerty (0055383)
Section Chief, Antitrust Section
Edward J. Olszewski (0082655)
Assistant Section Chief, Antitrust Section
Jason W. Palmer (0088336)
Senior Assistant Attorney General, Antitrust Section
Sarah Mader (*pro hac vice*) (0102270)
Assistant Attorney General, Antitrust Section
30 East Broad Street, 26th Floor
Columbus, Ohio
Telephone; (614) 466-4328
Fax: (614) 995-0266
Beth.Finnerty@OhioAGO.gov
Edward.Olszewski@OhioAGO.gov
Jason.Palmer@OhioAGO.gov
Sarah.Mader@OhioAGO.gov

*Counsel for the State of Ohio, ex rel., Attorney General Dave Yost*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 30, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Notice of this filing will be sent to all other parties not represented by counsel via regular U.S. Mail.

                                                              */s/ Jason W. Palmer*
                                                             Jason W. Palmer
                                                             Counsel for Plaintiff the State of Ohio