UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, ex rel. DAVE YOST ATTORNEY GENERAL OF OHIO<br><br>*Plaintiff*,<br><br>v.<br><br>ASCENT HEALTH SERVICES LLC; EXPRESS SCRIPTS, INC.; THE CIGNA GROUP; EVERNORTH HEALTH, INC.; PRIME THERAPEUTICS LLC; HUMANA PHARMACY SOLUTIONS, INC.; HUMANA INC.<br><br>*Defendants*. | Civil Action No. 2:23-CV-1450<br><br>Judge Michael H. Watson<br>Magistrate Judge Chelsey M. Vascura |

**Plaintiff State of Ohio's Opposition in Response to Defendants' Humana Inc. and Humana Pharmacy Solutions, Inc. Motion to Dismiss for Failure to State a Claim**

The State of Ohio ("the State") submits this opposition to the Rule 12(b)(6) Motion to Dismiss ("Motion") filed by Defendants Humana Inc. ("Humana") and Humana Pharmacy Solutions, Inc. ("HPS") (collectively, "Humana Defendants"). The State has sufficiently pled Valentine Act, Civil Conspiracy, and Unjust Enrichment claims against Defendants for participating in an opaque and unlawful trust to control drug rebate negotiations for covered commercial lives in Ohio. Further, the State holds sovereign standing and quasi-sovereign *parens patriae* standing to enforce Ohio's laws and protect the well-being of Ohio residents. The Ohio Attorney General is statutorily authorized to do all things necessary—including requesting disgorgement—when conducting an antitrust case.

Accordingly, the Court should deny Humana Defendants' Motion.

# INTRODUCTION

Endowed with statutory authority to enforce Ohio law and protect Ohio's residents and economy, the Ohio Attorney General acted against seven entities embroiled in manipulating prescription drug prices. This action represents a deliberate declaration that the named defendants must be stopped from violating Ohio's laws and harming its residents through higher drug prices. The State's Complaint illustrates this complex combination of players and their roles in influencing drug prices within the prescription drug supply chain. Shedding light on an enigmatic conspiracy, the State alleges specific actions taken by all defendants—including Humana Defendants—to create and maintain a robust pay-to-play scheme for drug formulary access. This immense PBM purchaser power, consolidated within an obscure, off-shore GPO, has resulted in anticompetitive conduct and strong-arm tactics preventing free market forces from ensuring that all Ohioans can afford the prescription drugs on which their lives depend.

Humana Defendants' Motion fundamentally misunderstands Ohio law regarding the Valentine Act, the Attorney General's *parens patriae* authority, unjust enrichment, and civil conspiracy. Their reliance on holdings contained in *Twombly* and *Illinois Brick* attempts to improperly supplant Ohio's explicit statutes regarding Valentine Act pleading standards and *parens patriae* authority. The State—through its statutorily authorized Attorney General—has more than sufficiently pled its Valentine Act, unjust enrichment, and civil conspiracy claims against Humana Defendants.

# ARGUMENT

**I.    The State pled detailed factual allegations exceeding the proper pleading standards of a Valentine Act claim.**

In their Motion, Humana Defendants place the State's Complaint under the federal antitrust pleading standards' microscope and proclaim it deficient. Humana Motion, ECF No. 77 at PageID

2

2674–81 (highlighting the effect of *Twombly*'s plausibility pleading standard on the State's complaint). But this argument forgets that the State did not bring a federal antitrust claim and that the correct pleading standard lens is the one codified by the Ohio legislature in the Valentine Act. The State has not only followed Ohio's explicit statute detailing how to plead a Valentine Act claim but has far exceeded the statutory pleading standard.

### A. The plain text of the Valentine Act is not supplanted by federal antitrust pleading standards.

Ohio Revised Code §1331.09 provides the following unambiguous guidance on the standards by which the sufficiency of a Valentine Act complaint must be judged:

> In an indictment for an offense provided for in sections 1331.01 to 1331.14, inclusive, of the Revised Code, it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member thereof, or acted with or in pursuance of it or aided or assisted in carrying out its purposes, without giving its name or description, or how, when, and where it was created. Ohio Rev. Code §1331.09.

At least one Ohio court has held that §1331.09 applies equally to civil and criminal actions. In *Goode v. Ohio Valley Druggists' Ass'n*, 16 Ohio Dec. 586 (C.P. Hamilton Cty. 1906), the Court analyzed the proper application of the predecessor to §1331.09—Section 5, 93 O.L. 144—which was the same in all relevant respects as the current statutory language. In upholding the sufficiency of the complaint, the Court clarified that Section 5 provided the standard by which to assess the pleading of a civil Valentine Act claim, stating that: "What is here held sufficient for the purposes of a criminal prosecution, applies in all its force to a civil action." *Goode*, 16 Ohio Dec. at 587. No Ohio court has held otherwise.

Thus, the required statutory elements of pleading a Valentine Act claim—either civil or criminal—are: (1) that defendant is a member of a combination; and (2) that the purpose or effects of the combination are among those listed as improper in the Act. This is all that needs to be pled

for a Valentine Act claim. In ruling upon a motion seeking dismissal of a complaint for failure to state a claim, "[t]he allegations of the complaint must be taken as true, and those allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Ohio Bureau of Workers' Comp. v. McKinley*, 130 Ohio St. 3d 156, 159 (2011).

Ohio courts have recognized the unambiguous pleading standard contained within Ohio's Valentine Act and have rebuffed attempts to expand it. *See, e.g.*, *State v. Ice Delivery Co.*, 17 Ohio Dec. 515 (C.P. Hamilton Cty. 1907); *State v. Crystal Ice Mfg. & Cold Storage Co.*, 17 Ohio Dec. 640 (C.P. Franklin Cty. 1906); *see also Needles v. Bishop & Babcock Co.*, 14 Ohio Dec. 445, 447–48 (C.P. Franklin Cty. 1904 (a Valentine Act complaint need not show "evil intent or actual injury to the public")).

While some relatively recent Ohio cases have dismissed Valentine Act claims based on the application of federal pleading standards (*see, e.g.*, *Eichenberger v. Graham*, 2013-Ohio-1203 (10th Dist. App. 2013) (lack of allegations of antitrust injury and "adverse affect [sic] on the market as a whole"); *Schweitzer v. Riverside Methodist Hosps.*, 108 Ohio App. 3d 539, 544–45 (10th Dist. App. 1996) (complaint must allege antitrust injury, "impact on the competition as a whole within the relevant market…", and market power)), no such decision has considered and expressly rejected §1331.09. Those decisions are silent on the issue.

Ohio Revised Code §1331.09 has not been repealed by the Ohio legislature, nor has it been held inapplicable or unenforceable by any court. The statute provides the unambiguous standard by which the State's Complaint must be judged. And as the Ohio Supreme Court has declared: "…when the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Prade v. Ninth Dist. Court of Appeals*, 151 Ohio St. 3d 252, 255 (2017); *see also Bevan & Assocs LPA v. Yost*, 929 F. 3d 366, 375 (6th Cir.

4

2019) (unambiguous statutory language "'must be applied as written' and not be subject to 'further interpretation'").

Even if the *Twombly* plausibility threshold were applied to the pleading standards of Revised Code §1331.09, the result is unchanged. As the section below demonstrates, the Complaint more than plausibly alleges that Humana Defendants are members of the specified combinations and that the purpose or effects of those combinations are among those listed as improper in the Act.

**B. The State's Complaint plausibly details the existence and improper purposes of the Ascent combination and Humana Defendants' participation in it.**

Count III of the State's Complaint alleges the existence of the combination known as Ascent Health Services, that Humana Defendants participate in this combination, and that the purposes or effects of the combination were to restrain trade, to "fix, harmonize, and raise" drug prices, to preclude free competition in the sale of prescription drugs, and to exclude from formularies any drugs for which manufacturers refused to increase rebates and thus drug list prices. Complaint, ECF No. 12 at PageID 1358. Those allegations clearly satisfy the standard set forth in Revised Code §1331.09 for pleading a Valentine Act claim.

But the State goes further and alleges even *more* than the required statutory pleading elements. Ohio consumers have been injured by Humana Defendants' and its co-conspirators' acts that have resulted in supracompetitive prescription drug prices. *Id.* at PageID 1359. The State also alleges that Humana Defendants engaged in deceptive acts designed to conceal and maintain the operations of the combination. *See id.*

Humana Defendants' contentions that the State fails to allege evidence of an "agreement" or that Humana Pharmacy Solutions improperly exchanged competitively sensitive information are irrelevant; the State need only plead that Humana Defendants participate in a combination and

5

its improper purposes or effects. The State has done so. Accordingly, the State's Complaint sufficiently pleads a Valentine Act claim and withstands a motion to dismiss.

**II.     The State—through its Attorney General—has sovereign and quasi-sovereign *parens patriae* standing to request equitable disgorgement relief in antitrust cases.**

In an exercise of sovereign and quasi-sovereign authority, the State's Attorney General initiated this antitrust suit to halt all defendants' illegal forays into manipulating drug pricing. Humana Defendants devote substantial space to their argument that the Attorney General lacks *parens patriae* standing to request disgorgement for the State's claims against them. But in attacking the State's standing, Humana Defendants' strong reliance on *Illinois Brick*'s indirect purchaser rule demonstrates unfamiliarity with Ohio law and the State's *parens patriae* authority under long-standing Supreme Court precedent. The State is not limited to *parens patriae* authority for natural persons in antitrust cases, and disgorgement is a statutorily appropriate remedy in such cases.

**A.     Ohio Revised Code § 109.81 sanctions sovereign standing and the Attorney General's quasi-sovereign *parens patriae* capacity for antitrust cases.**

Humana Defendants incorrectly state that the State's *parens patriae* authority for antitrust cases is in relation to "natural persons" only. Humana Motion to Dismiss, ECF No. 77 at PageID 2671. That is neither what the State pled nor is that a binding limitation contained in Ohio law. Instead, its Valentine Act claims were brought pursuant to the Attorney General's sovereign standing and quasi-sovereign *parens patriae* capacity under Ohio Rev. Code § 109.81 and at common law. *See* Complaint, ECF No. 12 at PageID 1317–18.

The very first sentence of § 109.81 clearly illustrates this breadth: "The attorney general *shall* act as the attorney at law in any antitrust case *for the state*." Ohio Rev. Code § 109.81(A) (emphasis added). This declaration epitomizes sovereign standing by requiring the Ohio Attorney

6

General to serve as the State's chief law officer when bringing an antitrust case on behalf of the State. *See* Ohio Rev. Code § 109.02 (stating that "[t]he attorney general is the chief law officer for the state"); § 109.81(A) (mandating the attorney general represent the State in any antitrust case).

A State has a sovereign interest (and therefore standing) in enforcing its own laws. *Alfred L. Snapp & Son v. P.R.*, 458 U.S. 592, 601 (1982). Here, the Ohio Attorney General is acting as the attorney at law for the State of Ohio in an antitrust case rooted in Ohio's antitrust law. The State has sovereign standing to enforce its antitrust laws and is doing so by seeking statutory civil forfeiture—among other appropriate remedies—for defendants' collusive acts. *See* Complaint, ECF No. 12 at PageID 1362–64. Likewise, states may exercise *parens patriae* standing for quasi-sovereign interests such as the economic and physical well-being of its residents. *Snapp*, 458 U.S. at 607. Once again, the State brought its Valentine Act claims to protect the economic and physical well-being of its residents from Defendants' acts. Complaint, ECF No. 12 at PageID 1317–18.

Although § 109.81 also mentions *parens patriae* in the context of "natural persons," this is simply a statutory grant for the Attorney General to have additional *parens* standing on behalf of certain Ohio consumers. That statutory grant differs from the Attorney General's common law and statutory ability to exercise sovereign standing and quasi-sovereign *parens* standing on behalf of the State in antitrust cases. § 109.81 states that the Attorney General "may" act as *parens patriae* for natural persons in antitrust cases. Ohio Rev. Code § 109.81(A). While the statute allows this type of *parens* standing, Ohio is not *required* to represent antitrust claims on behalf of a group of natural persons. Accordingly, the State did not exercise its discretion to represent natural persons in this case.

Humana Defendants' contention that the State is suing on behalf of Ohio purchasers is incorrect and ignores what Ohio has explicitly pled for its *parens patriae* standing. The State did

not plead *parens patriae* standing on behalf of "natural persons" for its antitrust claims. Instead, recognizing the widespread, pervasive harm to Ohio's economy and physical well-being of all Ohioans, the Attorney General brought Ohio antitrust claims on behalf of the State itself to enforce Ohio law and protect Ohioans' physical and economic well-being.

      **B.    Ohio law grants the State authority to request disgorgement in antitrust cases.**

§ 109.81 also statutorily requires that the Attorney General "do all things necessary under the laws of any state or the federal government to properly conduct any antitrust case in which he acts as attorney at law, including the bringing of an action for equitable relief[.]" Ohio Rev. Code § 109.81(A). Ohio law recognizes disgorgement as a form of equitable relief and that nothing in the Valentine Act limits the Attorney General from seeking disgorgement for Valentine Act claims. *State ex rel. Dann v. Am. Int'l Group, Inc.*, Case No. 633857, 2008 Ohio Misc. LEXIS 320 at *10–*11 (Ct. Com. Pl. July 30, 2008); *see FTC v. Vyera Pharms., LLC*, 479 F. Supp. 3d 31, 51–52 (S.D.N.Y. 2020) (finding that Ohio Rev. Code § 109.81 allows Ohio to request equitable monetary relief such as disgorgement for its Valentine Act claims).

Humana Defendants' misguided attempt to conflate damages and disgorgement through the vehicle of *Illinois Brick* is unavailing. While both remedies may start with the same letter and involve money, that is where the similarity ends. Damages is a compensatory legal remedy designed "to compensate for a proven injury or loss." *William Beaumont Hosp. v. Fed. Ins. Co.*, 552 Fed. Appx. 494, 499 (6th Cir. 2014) (describing the difference between damages and disgorgement) (quotation marks and citation omitted). Disgorgement is "a remedy tethered to a wrongdoer's net unlawful profits" and designed to restore the status quo, "thus situating the remedy squarely within the heartland of equity." *Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020) (quotation marks and citation omitted).

8

The State is not seeking damages for any defendant's actions. Instead, the State is pursuing equitable and civil forfeiture remedies as the best means to restrain and penalize defendants' harmful acts. Humana Defendants' reliance on *Illinois Brick* overextends the U.S. Supreme Court's holding to apply to an entirely different remedy to reach a type of *parens* standing that the State simply did not plead. The Ohio Attorney General properly has sovereign standing and quasi-sovereign *parens patriae* standing to seek an equitable disgorgement remedy for Humana Defendants' Valentine Act violations.

**III.   The State's complaint appropriately demonstrates that Humana Defendants were unjustly enriched by manipulating Ohio residents' prescription benefits.**

At this early juncture, the State is only required to plausibly plead an unjust enrichment claim—not prove the ultimate merits of the claim. The State must plead facts that "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984). The State has satisfied pleading all three elements. Complaint, ECF No. 12 at PageID 1361–62 (benefit conferred upon defendants); PageID 1332 (example of knowledge of the benefit to defendants through higher rebates); and PageID 1362 (retention of the benefit by defendants).

In its Motion, Humana Defendants focus only on the State's alleged deficiency in pleading that a benefit was conferred by the State on Humana Defendants. Motion to Dismiss, ECF No. 77 at PageID 2682–83. To support its dismissal request, Humana Defendants entangle their indirect purchaser argument with this first element by relying on the effect of *Johnson v. Microsoft*'s indirect purchaser holding on unjust enrichment claims. Humana Defendants claim the State is missing a required showing of an "economic transaction" to support that a direct or implied contract exists between Ohio citizens and Humana Defendants. *Id.* But what Humana Defendants

9

fail to recognize is that this "economic transaction" can be indirectly conferred by the plaintiff upon the defendant and need not be a purely monetary benefit.

In certain circumstances, courts permit indirect economic transactions as the basis of unjust enrichment claims. *Ohio Edison Co. v. Direct Energy Bus., LLC*, 2017 U.S. Dist. LEXIS 117025 at *7–8 (N.D. Ohio 2017); *see, e.g.*, *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 823–825 (N.D. Ohio 2006) (finding a sufficient transactional nexus for an unjust enrichment claim between plaintiff homebuyers and a title insurer with whom they had no direct dealings); *Paikai v. General Motors Corp.*, 2009 U.S. Dist. LEXIS 8538 (E.D. Calif. 2009) (allowing an Ohio car purchaser to bring an unjust enrichment claim against the car manufacturer for wrongfully retaining funds the car purchaser had paid to the car dealer for warranty coverage). An insufficient economic transaction occurs when the defendant sells to a middleman or retailer "without regard to who the final consumer might be." *Davis v. Lawyers Title Ins. Corp.*, No. 1:06 CV 357, 2007 U.S. Dist. LEXIS 17961 at *15 (N.D. Ohio Mar. 13, 2007).

This type of economic transaction analysis squares with the Ohio Supreme Court's *Johnson v. Microsoft* holding. Microsoft sold its operating system to a Gateway retailer for preinstallation into a Gateway computer that was later sold without Microsoft's knowledge or involvement to Johnson. The *Johnson* court found these facts insufficient to give rise to the type of indirect economic transaction between Johnson and Microsoft appropriate for an unjust enrichment claim. But here, Humana Defendants sit squarely in the middle of the drug distribution system, orchestrating every transaction. PBMs influence virtually every aspect of the process of getting prescription drugs from the manufacturer to the consumer. Complaint, ECF No. 12 at PageID 1320 (defining PBM Services to include creating retail pharmacy networks that determine whether consumers can get prescriptions filled, designing the list of drugs that will be covered by a plan,

and negotiating drug prices). Humana Defendants are not distant suppliers with no idea who their services impact.

Finally, the benefit conferred upon Humana Defendants need not take the form of a monetary transfer. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984) (finding that the benefit conferred upon defendant were ideas). The State has alleged that Humana Defendants received ill-gotten gains that flow from the supracompetitive list prices consumers have been forced to pay. Complaint, ECF No. 12 at PageID 1359 ("Defendants have realized and enjoyed ill-gotten gains as a direct result of the increased Rebates, fees, or "value" the Manufacturers are required to pay under agreements with Defendants, resulting in supracompetitive List Prices[.]"). The State has sufficiently pled all elements of an unjust enrichment claim for Humana Defendants' rebate actions.

### IV. Humana Defendants' acts in an unlawful trust created to control drug rebate negotiations sufficiently demonstrate a civil conspiracy claim.

As stated previously, the State's Valentine Act claim against Humana Defendants was sufficiently pled and comprises the underlying illegal act for the State's common law civil conspiracy claim against Humana Defendants. Contrary to Humana Defendants' arguments, the State has likewise pled detailed allegations of a "common understanding" resulting in a "malicious combination." Motion to Dismiss, ECF No. 77 at PageID 2681.

Under Ohio law, a "malicious combination" does not require an express agreement between defendants but only a showing of a common understanding to commit the unlawful act. *Bash v. Textron Fin. Corp.*, No. 1:12 CV 987, 2017 U.S. Dist. LEXIS 83179 at *9 (N.D. Ohio May 30, 2017). The level of agreement need only be that the alleged coconspirator shared in the general conspiratorial objective. *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 538 (6th Cir. 2000).

Here, the State has alleged that HPS joined Ascent with a common understanding to secure higher rebates from drug manufacturers. Complaint, ECF No. 12 at PageID 1350. The State has also alleged that Humana Defendants (as coconspirators of the Valentine Act rebate combination) shared in the general conspiratorial objective of "placing the management and control of their trusts, and the products and services controlled by them, in the hands of a trustee — Defendant Ascent — with the intent of restraining trade, fixing the price of drugs and diminishing the output of retail pharmacy services." Complaint, ECF No. 12 at PageID 1358. An additional conspiratorial objective alleged is the "exclu[sion] from their Formularies the drugs of Manufacturers that refuse to increase the Rebates, fees or "value" paid to Defendants, and to increase the List Prices of their drugs." *Id.* These specific details demonstrate sufficiently pled allegations of Humana Defendants' "common understanding" of the "malicious combination."

Finally, the State alleged that Humana Defendants conspired with defendants Ascent Health Services, Evernorth Health, Prime Therapeutics, The Cigna Group, and Express Scripts to secure higher drug rebates, thereby increasing list prices for drugs. *See id.* at PageID 1362. As such, Humana Defendants' reliance on the "intracorporate conspiracy" doctrine does not shield them because this defense only applies to alleged conspiracies where *all* named defendants are employees, agents, or wholly-owned subsidiaries of each other. Humana Defendants omit a critical line from one of their cited cases: "That is, 'if *all* of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy.'" *Williams v. New Day Farms, LLC*, No. 2:10-CV-00394, 2011 U.S. Dist. LEXIS 36543, at *32 (S.D. Ohio Mar. 31, 2011) (citations omitted) (emphasis added). That is not the case here. Humana Defendants have conspired with five other separate entities to manipulate drug rebates. Thus, the intracorporate conspiracy doctrine is inapplicable.

## CONCLUSION

For the foregoing reasons, the State respectfully requests the Court deny Humana Defendants' Motion to Dismiss.


Dated: November 3, 2023

Respectfully submitted,

DAVE YOST
Ohio Attorney General (0056290)
SHAWN BUSKEN (0083585)
Deputy First Assistant Attorney General

  /s/ *Jennifer L. Pratt*
JENNIFER L. PRATT (0038916) (Trial Attorney)
Director of Major Litigation
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Telephone: (614) 752-8237
Fax: (614) 466-5087
Jennifer.Pratt@OhioAGO.gov

Beth A. Finnerty (0055383)
Section Chief, Antitrust Section
Edward J. Olszewski (0082655)
Assistant Section Chief, Antitrust Section
Thomas J. Collin (0023770)
Principal Assistant Attorney General, Antitrust Section
Sarah Mader (0102270)
Assistant Attorney General, Antitrust Section
30 East Broad Street, 26th Floor
Columbus, Ohio
Telephone; (614) 466-4328
Fax: (614) 995-0266
Beth.Finnerty@OhioAGO.gov
Edward.Olszewski@OhioAGO.gov
Thomas.Collin@OhioAGO.gov
Sarah.Mader@OhioAGO.gov

*Counsel for the State of Ohio, ex rel., Attorney General Dave Yost*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Notice of this filing will be sent to all other parties not represented by counsel via regular U.S. Mail.

    */s/ Jennifer L. Pratt*
Jennifer L. Pratt
Counsel for Plaintiff the State of Ohio