## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| State of Ohio, ex rel. Dave Yost Attorney General of Ohio,<br><br>*Plaintiff,*<br><br>v.<br><br>Ascent Health Services LLC, Express Scripts, Inc., The Cigna Group, Evernorth Health, Inc., Prime Therapeutics LLC, Humana Pharmacy Solutions, Inc., and Humana Inc.,<br><br>*Defendants*. | Case No. 2:23-cv-01450-MHW-CMV |

## DEFENDANT PRIME THERAPEUTICS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I. FEDERAL PLEADING STANDARDS AND LAW APPLY TO THE
COMPLAINT ..........................................................................................................2

    A. *Twombly* and *Iqbal* Apply to the Complaint...............................................2

    B. Section 1331.09 of the Valentine Act Is Inapplicable .............................3

II. PLAINTIFF FAILS TO STATE ANY ANTITRUST CLAIM AGAINST PRIME ...........7

    A. The Rule of Reason Applies to the Valentine Act Claims Against Prime...............7

    B. The Complaint's Conclusory Pleadings Fail to Allege Any Unlawful
Agreement in Count II or III ......................................................................9

        1. Count II Fails to State an Unlawful Agreement Between Prime and
Anyone ...........................................................................................10

        2. The Complaint's Allegations Are Insufficient to Establish that
Participation in Ascent is Unlawful, Requiring Dismissal of Count
III........................................................................................................11

    C. The State Lacks Authority to Seek Disgorgement of Profits for its
Antitrust Claims .......................................................................................13

    D. Claims Predicated on Prime's Conduct Pre-March 27, 2019 Should Be
Dismissed .................................................................................................13

III. PLAINTIFF FAILS TO STATE AN UNJUST ENRICHMENT CLAIM......................14

IV. THE CIVIL CONSPIRACY COUNT FAILS TO STATE A CLAIM ............................16

V. PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED.........17

CONCLUSION...................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010) .................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................2, 3, 6, 12

*Avery v. City of Rossford*, 762 N.E.2d 388 (Ohio Ct. App. 2001)................................16

*B.D.G. v. Choice Hotels Int'l, Inc.*, WL 5935646 (S.D. Ohio Sept. 12, 2023)...................9, 12, 17

*Becker v. Cardinal Health, Inc.*,
    179 N.E.3d 769 (Ohio Ct. App. 2021)...................................................................15

*Bumpus v. Ward*,
    2012 Ohio 4674 (5th Dist. 2012) ...........................................................................2

*C.K. & J.K., Inc. v. Fairview Shopping Center Corp.*,
    407 N.E. 2d 507 (Ohio 1980) .................................................................................8

*Cascades Comput. Innovation LLC v. RPX Corp.*,
    2013 WL 316023 (N.D. Cal. Jan. 24, 2013) .........................................................10

*Cesario v. Chesapeake Appalachia, L.L.C.*,
    2013 U.S. Dist. LEXIS 199831 (S.D. Ohio May 14, 2013) ...................................3

*Chicago Title Ins. Co. v. Great Western Financial Corp.*,
    444 P.2d 481 (Cal. 1968) ....................................................................................5, 6

*Dage v. Time Warner Cable*,
    395 F. Supp. 2d 668 (S.D. Oh. 2005) .....................................................................9

*Doe v. Bredesen*,
    507 F.3d 998 (6th Cir. 2007) .....................................................................9, 12, 17

*eBay v. MercExchange*,
    LLC, 547 U.S. 388 (U.S. 2006) ............................................................................17

*Eichenberger v. Graham*,
    2013-Ohio-1203 (10th Dist. 2013) .........................................................................8

*G.H.I.I. v. MTS, Inc.*,
    147 Cal. App. 3d 256 (1st Dist. 1983) ....................................................................6

*Goode v. Ohio Valley Druggists Ass'n,*
    16 Ohio Dec. 586 (C.P. Hamilton Cty. 1906)...............................................................5

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters Auto Truck Drivers Local*
    *No. 70 of Alameda Cty.*,
    415 U.S. 423 (1974)..............................................................................................2

*Hambleton v. R.G. Barry Corp.*,
    12 Ohio St. 3d 179 (1984) ...................................................................................15

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) ................................................................................6

*Humphrey v. United States AG Office,*
    279 Fed. Appx. 328 (6th Cir. 2008).........................................................9, 12, 16

*List v. Burley Tobacco Growers' Co-op Assn.*,
    114 Ohio St. 361 (1926).........................................................................................7

*Maness v. Boston Scientific*,
    751 F.Supp.2d 962 (E.D. Tenn. 2010)...................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................10

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
    472 U.S. 284 (1985)............................................................................................11

*Pickle v. Swinehart,*
    166 N.E.2d 227 (Ohio 1960) ...............................................................................16

*Prez. Partners Inc. v. Sawmill Park Props. LLC,*
    2022 U.S. Dist. LEXIS 237659 ...........................................................................12

*Re/Max Int'l v. Smythe, Cramer Co.*,
    265 F. Supp. 2d 882 (6th Cir. 2003) ....................................................................8

*Rikos v. P & G,*
    2013 U.S. Dist. LEXIS 12405 (S.D. Ohio Jan. 30, 2013) ......................................9

*Schrock v. D & N Dev., Inc*.,
    1995 WL 495488 (Ohio Ct. App. June 28, 1995).................................................16

*Schweizer v. Riverside Methodist Hosps.*,
    108 Ohio App. 3d 539 (10th Dist. 1996) ...............................................................8

*Simmerman v. Ace Bayou Corp.*,
    304 F.R.D. 516 (E.D. Ky. 2015)............................................................................3

*Standard Oil Co. v. United States*,
  221 U.S. 1 (1911) .......................................................................................................... 8

*Stern v. Inter-Mountain Tel. Co.*,
  226 F.2d 409 (6th Cir. 1955) ........................................................................................ 3

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ........................................................................... 10, 14, 16

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) .................................................................................. 14, 16

*U.S. v. Miami University*,
  294 F. 3d 797 (6th Cir. 2002) ..................................................................................... 17

*Velez v. Cuyahoga Metro. Hous.*,
  2014 U.S. Dist. LEXIS 27480 (N.D. Oh. Mar. 3, 2014) ............................................ 17

*Wagner v. Circle W. Mastiffs*,
  732 F. Supp. 2d 792 (S.D. Oh. 2010) ........................................................................... 8

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
  648 F.3d 452 (6th Cir. 2011) ...................................................................................... 10

*Wilkey v. Hull*,
  366 F. App'x 634 (6th Cir. 2010) ................................................................................. 3

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1991) ....................................................................................................... 3

*Wright v. City of Dayton*,
  814 N.E.2d 514 (Ohio Ct. App. 2004) ....................................................................... 14

**Statutes**

Cartwright Act ........................................................................................................................ 5

Ohio Rev. Code § 1331.11 ....................................................................................................... 4

Ohio Rev. Code § 1331.12(B) ............................................................................................... 13

Ohio Rev. Code § 1331.09 ............................................................................................. *passim*

Sherman Act ..................................................................................................................... 1, 10

Valentine Act .................................................................................................................. *passim*

**Other Authorities**

*Biro & Williamson*, 88 Oh. Jur. Trade Regulation § 60 .................................................................4

Fed. R. Civ. P. 81(c)(1)...................................................................................................................2

Fed. R. Civ. P. 8 ..............................................................................................................................3

Fed. R. Civ. P. 12......................................................................................................................10, 12

## INTRODUCTION

The State of Ohio attempts to avoid dismissal of its Complaint against Prime based principally on two meritless arguments: first, that it is not subject to federal pleading standards; and second, that it is not bound by Ohio Supreme Court precedent establishing that Ohio's antitrust statute, the Valentine Act, *follows* the federal antitrust laws, including the Sherman Act. Neither argument withstands scrutiny.  The State pursued those arguments, however, because presumably it knows the Complaint fails to state a claim against Prime in the proper framework.

As Prime stated in its Motion to Dismiss (the "Motion"), both the Valentine Act and the Sherman Act require the State, under the rule of reason, to plead a relevant market, so the Court can assess whether the Complaint plausibly alleges market power and anticompetitive effects in that market flowing from the alleged unlawful restraint.  The State's opposition to Prime's Motion ("Opposition") ignores the rule of reason altogether, effectively conceding that the Complaint does not state a rule of reason claim.  Without a properly defined market or sufficient allegations of market power and anticompetitive effects as to Prime, Counts II and III cannot survive dismissal.

Nor can the State overcome the lack of plausible allegations that Prime entered into any *unlawful* agreement. Once the State's conclusory, non-specific legal conclusions are cast aside, the Complaint does not satisfy the federal pleading rules that the State so very much wants not to apply.  And the State is utterly silent on Prime's arguments that the Complaint's allegations about Prime are consistent with lawful behavior, whether in negotiating directly for rebates (Count II) or obtaining rebate services through Ascent (Count III).  That silence dooms both counts:  claims based on pleaded facts that are at least as consistent with lawful conduct require dismissal.

Finally, nothing in the State's Opposition corrects the defects in the State's unjust enrichment and civil conspiracy claims (namely, that neither pleads the requisite elements). Accordingly, Counts VI and VII must also be dismissed as to Prime.

## ARGUMENT

### I.  FEDERAL PLEADING STANDARDS AND LAW APPLY TO THE COMPLAINT

The State constructs its entire Opposition on the use of the wrong pleading standard and inapplicable law. The Court should decline the State's twin invitations to ignore federal pleading standards and Ohio's longstanding jurisprudence that applies federal antitrust laws to Valentine Act claims.

#### A.  *Twombly* and *Iqbal* Apply to the Complaint

The State's Opposition largely rests on a remarkable (and incorrect) proposition: the federal pleading standards, including *Twombly* and *Iqbal*, are inapplicable because the State originally filed the Complaint in state court, alleging claims only under Ohio state law. Opposition, ECF No. 87 at PageID 2774. In other words, the State would like the Court to ignore the removal of the Complaint to the Southern District of Ohio and proceed as if the case were still in Ohio state court, under what the State believes (incorrectly) to be a less stringent pleading standard.[1] The State, however, cites no authority for this proposition—because none exists.

Rule 81(c) of the Federal Rules of Civil Procedure expressly states the contrary: "[t]hese rules apply to a civil action after it is removed from a state court."  Fed. R. Civ. P. 81(c)(1); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court *after removal*") (emphasis added). Rule 81(c)(1)'s "expansive language contains no express exceptions . . . ."

---

[1] The State's position is strange, given that the Complaint was originally filed in Delaware County, Ohio, which follows federal pleading standards. *See, e.g.*, *Bumpus v. Ward*, 2012 Ohio 4674, ¶ 12, (5th Dist. 2012) (citing *Twombly*, the Fifth Appellate District stated that "the claims set forth in the complaint must be plausible, rather than conceivable" and that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

*Willy v. Coastal Corp.*, 503 U.S. 131, 134 (1991).  In other words, the federal rules (and their pleading standards) apply to *all* district court proceedings, including cases removed from state court.

The Sixth Circuit has long recognized this mandate, *see Stern v. Inter-Mountain Tel. Co.*, 226 F.2d 409, 410 (6th Cir. 1955), and has continued to adhere to it in analogous circumstances since *Twombly*. *See, e.g.*, *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010) (unreported) (applying *Twombly* pleading requirements in a diversity case to plaintiff's state-law claims)*.*  So too has this Court. *Cesario v. Chesapeake Appalachia, L.L.C.*, 2013 U.S. Dist. LEXIS 199831, at *4-5 (S.D. Ohio May 14, 2013) (Watson, J.) (applying *Twombly*, this Court dismissed in part plaintiff's claims in diversity case removed from Ohio state court).

Consistent with this standard, other district courts in this circuit have also applied *Twombly*'s requirements to cases removed from state court.  *Simmerman v. Ace Bayou Corp.,* 304 F.R.D. 516, 518-519 (E.D. Ky. 2015) (rejecting plaintiff's invitation to apply Kentucky's notice pleading standard, stating "federal pleading requirements under Rule 8 and the *Twombly-Iqbal* standard apply to removed complaints, even where the state pleading standard is more lenient"); *Maness v. Boston Scientific*, 751 F.Supp.2d 962, 966-967 (E.D. Tenn. 2010) (citing *Iqbal* and *Twombly* in dismissing complaint removed from state court and rejecting plaintiff's argument that state notice pleading standard applied).  As the court in *Maness* aptly concluded, "it does not matter whether Plaintiff's claims are based upon state law or federal law: *all* claims once removed to federal court, are subject to federal pleading requirements." *Id.* at 965.  Thus the federal pleading standards, including *Twombly* and *Iqbal*, apply to the Complaint.

## B.     Section 1331.09 of the Valentine Act Is Inapplicable

To avoid the application of federal pleading standards to its antitrust claims, the State argues that a specific Valentine Act provision, Ohio Rev. Code § 1331.09 ("R.C. 1331.09"), is an

all-encompassing "pleading standard" for all Valentine Act claims, whether civil or criminal, and whether in state or federal court. Opposition, ECF No. 87 at PageID 2775-76. This novel and ultimately unsupported position cannot save the Complaint from dismissal.

*First*, any claim in federal court is subject to *federal* pleading standards—even if the claim is based on state law. *See supra*, Section I.A. Consequently, Section 1331.09 does not supply the standard for determining the sufficiency of the pleadings in this Court.

*Second,* for a multitude of reasons, R.C. 1331.09 is much narrower than the State wants it to be. Taken together, these reasons support the logical conclusion that R.C. 1331.09 applies only to criminal indictments, not to civil suits; and although little judicial authority on point exists, no reasoned opinions suggest otherwise. For example:

**Plain Language.** R.C. 1331.09's plain language limits it to criminal matters. Titled "Contents of indictment," it states that "[i]n an indictment for an offense . . . it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member thereof . . . without giving its name or description, or how, when and where it was created." This provision's plain language limits it to criminal "indictments" for "offenses" against an "accused." That starkly contrasts with other Valentine Act provisions that *do* apply to civil actions. *See, e.g.*, Ohio Rev. Code § 1331.11 (Jurisdiction of Courts) (referencing the filing of a "complaint" to enjoin violations under the Act that are civil in nature).

**Secondary Authorities**. Ohio state law secondary sources confirm that Section 1331.09 applies only to criminal actions. *See Biro & Williamson*, 88 Oh. Jur. Trade Regulation § 60, Indictments in criminal prosecutions under Monopolies Laws (citing Ohio Rev. Code § 1331.09).

**Absence of Reliance in the Complaint.** The Complaint itself does not cite Section 1331.09 anywhere. Instead, Counts II and III expressly rely on other Valentine Act provisions:

4

"Plaintiff brings this action pursuant to" Sections 109.81, 1331.01 through 1331.04, 1331.06, and 1331.11 of the Ohio Revised Code. Compl. ECF No. 12 at PageID 1356, 1358. The exclusion of R.C. 1331.09 from the Complaint itself suggests the State knows its application is limited to the criminal context.

**Absence of Authority**. The State cites only a single, ancient Ohio Court of Common Pleas case for the proposition that R.C. 1331.09 applies to a civil Valentine Act claim. *See* Opposition, ECF No. 87 at PageID 2274-75 (citing *Goode v. Ohio Valley Druggists Ass'n,* 16 Ohio Dec. 586 (C.P. Hamilton Cty. 1906)). *Goode*, which dealt with Section 1331.09's predecessor statute, offers no analysis on this point and has never been cited for the proposition the State now advocates— that R.C. 1331.09 supplies a *pleading* standard applicable to both criminal and civil proceedings under the Valentine Act. The absence of more recent, binding authority on this point when scores of civil Valentine Act cases have been litigated in both state and federal Ohio courts reinforces that *Goode* was simply wrong and R.C. 1331.09 has always been understood to be limited to criminal matters.

**Similar Argument Rejected Elsewhere.** At least one state court, faced with a similar argument based on a virtually identical provision—Section 16756 of California's Cartwright Act[2]—expressly rejected the rationale that the State offers here. *See Chicago Title Ins. Co. v. Great Western Financial Corp.*, 444 P.2d 481, 487 (Cal. 1968). In *Chicago Title*, the California Supreme Court held that Section 16756 did not apply in civil actions. The California Supreme Court concluded that civil conspiracy claims under the Cartwright Act cannot be generally alleged

---

[2] CAL. BUS. & PROF. CODE § 16756 ("In any indictment, information or complaint for any offense named in this chapter, it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member of, acted with, or in pursuance of it, or aided or assisted in carrying out its purposes, without giving its name or description, or how, when and where it was created.").

5

"without a statement of the facts constituting the conspiracy" because, just like under the federal statutes, such allegations are nothing more than legal conclusions insufficient to state a cause of action.  *Id.* at 488; *see also G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 265 n.4 (1st Dist. 1983) (rejecting as legally insufficient a complaint that lacked factual allegations of specific conduct, and noting that in *Chicago Title*, "the California Supreme Court determined that section 16756 does *not* obviate the necessity of a specific allegation of a restraint in a civil case").

*Third*, even if R.C. 1331.09 were to apply to civil cases (notwithstanding federal pleading rules), its scope is far more limited than the State suggests.  At most, R.C. 1331.09 would excuse the State from pleading the "who, what, when, and where" of any alleged agreement or conspiracy. But the State would still have to plead "the purpose or *effects* of the trust or combination," and in federal court, those allegations must meet the plausibility standard under *Twombly* and the rule of reason.  Ohio Rev. Code § 1331.09 (emphasis added); *see infra* Section II.A.  That principle is especially important here, where participating in a group purchasing organization is entirely consistent with lawful behavior.  *See* Motion, ECF No. 76 at PageID 2641-46.

***

In sum, the State's novel R.C. 1331.09 argument does not withstand scrutiny. Section 1331.09 does not apply to a civil complaint in any court.  And if it did, it would not excuse the State from pleading plausible allegations under the rule of reason.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (a complaint survives only if it has "facial plausibility," with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (same, quoting *Iqbal*). The Complaint does not meet this standard and must be dismissed.

## II.     PLAINTIFF FAILS TO STATE ANY ANTITRUST CLAIM AGAINST PRIME

### A.     The Rule of Reason Applies to the Valentine Act Claims Against Prime

Prime's opening brief explained in detail that the two Valentine Act antitrust claims pleaded against Prime (Counts II and III) should be dismissed because both are governed by the rule of reason, and under the rule of reason, both counts fail to state a claim. *See* Motion, ECF No. 76 at PageID 2641-46.

Remarkably, the State's Opposition ignores the rule of reason altogether. Indeed, the phrase "rule of reason" appears nowhere in the Opposition. Instead, parroting the language from R.C. 1331.09, the State asserts that to "sufficiently" plead a Valentine Act claim, the Complaint need only allege "(1) that defendant is a member of a combination; and (2) that the purpose or effects of the combination are among those listed as improper in the Act." Opposition, ECF No. 87 at PageID 2775. The State then posits that Prime's arguments about "product and geographic market definition, market power, and anticompetitive effects" required to plausibly plead a Valentine Act claim are "inapposite" because *Johnson v. Microsoft Corp.*—an Ohio Supreme Court case—"does not create a mandate that federal law be applied." *Id.* at PageID 2778. The State is wrong.

To start, *Johnson* is clear: "Ohio has long followed federal law in interpreting the Valentine Act" and "long-standing Ohio jurisprudence . . . *followed* federal law in antitrust matters." 834 N.E.2d 791, 798 (Ohio 2005). Yet the State would have this Court believe that *Johnson* was simply commenting on the remarkable coincidence that *all* Ohio courts have repeatedly used Sherman Act decisions to interpret the Valentine Act, but were not *required* to do so. Like the Complaint's allegations, that argument is not plausible.

The Ohio Supreme Court has applied the rule of reason for Valentine Act claims for over a century. *See List v. Burley Tobacco Growers' Co-op Assn.*, 114 Ohio St. 361, 371, 374 (1926)

(adopting the rule of reason as applicable to the Valentine Act under the Sherman Act framework, citing *Standard Oil Co. v. United States*, 221 U.S. 1 (1911)); *C.K. & J.K., Inc. v. Fairview Shopping Center Corp.,* 407 N.E. 2d 507, 509 (Ohio 1980) (confirming that the rule of reason applies to Valentine Act claims).  As the State concedes, Opposition, ECF No. 87 at PageID 2776, Ohio appellate courts have affirmed dismissal of Valentine Act claims at the motion to dismiss stage for failure to adequately plead Valentine Act claims under the rule of reason.  *See Eichenberger v. Graham*, 2013-Ohio-1203, ¶¶ 14-15 (10th Dist. 2013) (affirming trial court's dismissal of claim for failure to plead a relevant market and anticompetitive effects); *Schweizer v. Riverside Methodist Hosps.*, 108 Ohio App. 3d 539, 544-545 (10th Dist. 1996) (dismissing claim for failure to plead antitrust injury in Valentine Act claim under the rule of reason).  Consistent with that jurisprudence, the Sixth Circuit has similarly affirmed dismissal of Valentine Act claims at the motion to dismiss stage.  *See Re/Max Int'l v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 903 (6th Cir. 2003) (citing *C.K. & J.K.* and affirming dismissal of Valentine Act claims, including for failure to plead anticompetitive effects under the rule of reason).

Nor can the State avoid the rule of reason by relying solely on R.C. 1331.09.  That section, if applicable, still requires that the State plead the "effects" of the allegedly unlawful combination, and the rule of reason is specific as to how effects are pleaded.  *See* Motion, ECF No. 76 at PageID 2641-46; *see also Eichenberger,* 2013 Ohio 1203, ¶¶ 14-15; *Schweizer*, 108 Ohio App. 3d at 544-45.

The Complaint fails at every turn to plead sufficient (let alone plausible) facts to allege the necessary requirements for an antitrust claim under the rule of reason: it fails to define a plausible relevant market; it fails to plead sufficient factual allegations of market power in any relevant market; and it fails to plead sufficient factual allegations of anticompetitive effects in any relevant

market, requiring dismissal. Motion, ECF No. 76 at PageID 2641-46; *see also Wagner v. Circle W. Mastiffs,* 732 F. Supp. 2d 792, 804 (S.D. Oh. 2010) ("[A]n 'insufficiently pled or totally unsupportable market' will necessitate a dismissal." (citation omitted)). The State's Opposition does not even try to deny or explain these deficiencies. Because the State failed to do so, it has waived any argument that it has adequately pleaded its claims under the rule of reason.[3] *See Humphrey v. United States AG Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) (arguments not raised in opposing motion to dismiss are waived); *see also Rikos v. P & G,* 2013 U.S. Dist. LEXIS 12405, at \*5 (S.D. Ohio Jan. 30, 2013) (citing *Humphrey,* court held that "by not opposing Defendant's motion as to [certain] claims, Plaintiffs have waived any opposition to their dismissal"); *Doe v. Bredesen, 5*07 F.3d 998, 1007 (6th Cir. 2007) (finding that the district court correctly noted that Doe abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint); *B.D.G. v. Choice Hotels Int'l, Inc*., WL 5935646, at \*9 (S.D. Ohio Sept. 12, 2023) (plaintiff failed to respond to Choice's argument regarding apparent agency authority, so this Court will consider Plaintiff to have conceded this point). Counts II and III should be dismissed.

## B. The Complaint's Conclusory Pleadings Fail to Allege Any Unlawful Agreement in Count II or III

As Prime's opening brief explained in detail, the Complaint fails to allege any *facts* plausibly suggesting any unlawful agreement by Prime to support a claim in either Count II or III.

---

[3] The State is also foreclosed from arguing that any Valentine Act claim against Prime is subject to *per se* analysis. Prime argued in its opening memorandum that Counts II and III are subject to the rule of reason, rather than *per se* analysis. *See* Motion, ECF No. 76 at PageID 2641. The State made a conscious choice not to respond to this argument, and thus waived its right to pursue its claims against Prime on a *per se* basis. *See Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 678 (S.D. Oh. 2005) (court held that by failing to respond to a theory in responsive pleading, plaintiff abandoned it; the plaintiff was "therefore barred from relying on [that] theory for the remainder of this litigation"). But even if the State had not waived this argument, it fails on the merits, for the reasons Prime already articulated. *See* Motion, ECF No. 76 at PageID 2641.

*See* Motion, ECF No. 2647-49; *see also Twombly,* 550 U.S. at 556 (a plaintiff must allege "enough factual matter . . . to suggest that an [unlawful] agreement was made"); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436–37 (6th Cir. 2008) (affirming Rule 12 dismissal of Sherman Act claims because "bare allegations without any reference to the 'who, what, where, when, how or why'" were insufficient to plausibly allege unlawful agreement); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc*., 648 F.3d 452, 457 (6th Cir. 2011) ("the facts alleged must 'plausibly suggest[],' rather than be 'merely consistent with,' an agreement to restrain trade in violation of the Sherman Act" (citation omitted)).

### 1. Count II Fails to State an Unlawful Agreement Between Prime and Anyone

Count II, asserted against Prime alone, alleges a series of threadbare, legal conclusions that fails to state a plausible claim. *See* Motion, ECF No. 76 at PageID2647-48. Other than pointing back to those threadbare legal conclusions, *see* Opposition, ECF No. 87 at PageID 2777-78, the State's Opposition fails to point to any *factual* allegations that support an inference that any rebate agreement between Prime and *any* manufacturer for any specific drug entered into at *any* specific point in time is somehow *unlawful* rather than Prime seeking to be more competitive. The *fact* that Prime generally entered into rebate agreements with pharmaceutical manufacturers, without other detailed allegations about *why* any one of those specific agreements was unlawful, is simply insufficient to state a plausible unlawful agreement that is subject to antitrust scrutiny.

The State's utter failure to address Prime's argument that Count II makes no economic sense underscores this point. *See* Motion, ECF No. 76 at PageID 2648-49 (citing *Cascades Comput. Innovation LLC v. RPX Corp*., 2013 WL 316023, at *11 (N.D. Cal. Jan. 24, 2013) and *Matsushita Elec. Indus. Co. v. Zenith Radio Co*rp., 475 U.S. 574, 587 (1986)). Indeed, the Opposition ignores it altogether, effectively conceding it. For good reason: it defies economic

sense to allege that Prime, a small PBM, could simultaneously negotiate and manage hundreds of allegedly "unlawful" rebate agreements with hundreds of drug manufacturers over numerous years in order to increase the list price for hundreds of unspecified prescription drugs. Yet that is all the State has done. Count II should be dismissed on this basis.

2. **The Complaint's Allegations Are Insufficient to Establish that Participation in Ascent is Unlawful, Requiring Dismissal of Count III**

Count III likewise fails to allege *factual* allegations that Prime's participation in Ascent is unlawful. In its Opposition, the State relies on a series of group-pleaded, legal conclusions that do not make specific factual allegations about Prime's conduct and cannot form the basis of a claim. *See* Opposition, ECF No. 87 at PageID 2779. Once those are properly discarded, all that remains is an allegation that because Prime participates in Ascent, a GPO, to obtain better rebates, its conduct is unlawful.

But the State cannot credibly suggest that a GPO like Ascent is inherently unlawful when the State's own public universities have formed a "collaboration," Rx Ohio Collaborative ("RxOC"), which, according to RxOC's own public statements, "provides Ohio public sector employers an opportunity to join together to save money on drug costs while maintaining full control over their benefits and health plan architecture." *See* RX Ohio Collaborative allows Ohio public employers to save money on prescription drug costs, Jun. 28, 2009, https://news.osu.edu/rx-ohio-collaborative-allows-ohio-public-employers-to-save-money-on-prescription-drug-costs/ (last accessed Dec. 1, 2023). Indeed, the State ignored the authority Prime cited recognizing the procompetitive benefits of GPOs consistent with this very point. *See* Motion, ECF No. 76 at PageID 2641, 2649 (citing *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010); *Northwest Wholesale Stationers*, *Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 485 (1985)).

11

The State also fails to address Prime's argument and legal authority that the Complaint's allegations regarding Prime's decision to join Ascent are *consistent* with rational and procompetitive behavior, particularly when Prime had fallen behind its competitors. *See* Motion, ECF No. 76 at PageID 2650 (citing Compl., ECF No. 12 at PageID 1350, which states, "Prime was '15% behind the marketplace on cost of goods sold'"). But the State ignores these allegations at its own peril. *See Humphrey*, 279 Fed. Appx. at 331 (arguments not raised in opposing motion are waived); *Doe, 5*07 F.3d at 1007 (same); *Choice Hotels*, WL 5935646, at *9 (same). Where conduct alleged is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market[,]" *Twombly*, 550 U.S. at 554, that conduct cannot plausibly support an inference of an unlawful conspiracy. *See also Iqbal*, 556 U.S. at 678 ("the plausibility standard. . . asks for more than the *sheer possibility* that a defendant has acted unlawfully") (emphasis added). Prime's decision to join a GPO is not inherently unlawful; the State offers no counterview with specific factual allegations that suggest otherwise—perhaps because to do so would call into question its own public universities' conduct.

To survive Rule 12, Count III must plausibly allege facts specific to Prime from which an *unlawful* agreement could reasonably be inferred. Count III does not do so. *See, e.g. Prez. Partners Inc. v. Sawmill Park Props. LLC*, 2022 U.S. Dist. LEXIS 237659, at *9 (S.D. Ohio Oct. 12, 2022 (Watson, J.) (dismissing state Ohio statutory fraudulent transfer claims that presented a *possible*, but not *plausible* version of events because plaintiff failed to plead sufficient factual allegations to cross the plausibility threshold under *Twombly* and *Iqbal*). Accordingly, Count III should be dismissed.

**C.      The State Lacks Authority to Seek Disgorgement of Profits for its Antitrust Claims**

As underscored in Prime's opening brief, the State has no greater right to seek relief than the claimants on whose behalf it purports to represent—here Ohioans who allegedly paid "supracompetitive prices" for prescription drugs. And under the Valentine Act, there is no dispute that with respect to monetary relief, "an indirect purchaser of goods may not assert a Valentine Act claim for alleged violations of Ohio antitrust law." *Johnson*, 834 N.E.2d at 798.

In opposition, the State failed to address Prime's primary argument: attaching the labels of "ill-gotten gains" or "disgorgement of profits" cannot create additional forms of monetary relief sought by the State for "Ohio purchasers" that *Johnson*, 834 N.E.2d at 798, previously rejected. The Complaint's main premise rests on alleged overcharges. But allowing the State to seek disgorgement of any lost profits allegedly earned from an overcharge raises all the same concerns that caused the Ohio Supreme Court to reject indirect-purchaser claims under the Valentine Act close to twenty years ago. *See Johnson*, 834 N.E.2d at 798. The State's sole response is that Prime has no authority to "recast" the State's claim as one for damages. Prime has not done so; it merely points out that the way the State purports to cast its own "disgorgement" remedy is barred by Ohio law under *Johnson*.

**D.      Claims Predicated on Prime's Conduct Pre-March 27, 2019 Should Be Dismissed**

As Prime explained in its opening brief, Valentine Act claims are subject to a four-year statute of limitations period. *See* Motion, ECF No. 76 at PageID 2652 (citing Ohio Rev. Code § 1331.12(B)). In its Opposition, the State urges the Court to find the Complaint's alleged misconduct is ongoing and subject to the "continuing violation" doctrine. This argument misses the mark.

13

As an initial matter, the State appears to be concerned that its allegations regarding Prime and its decision to join Ascent are outside the limitations period. But that is not Prime's point—Prime does not deny that it joined Ascent within the four-year limitations period, as alleged. *See, e.g.*, Compl., ECF No. 12 at PageID 1347 (Ascent was launched in "May 2019"); *id.* at PageID 1348 ("Prime Therapeutics joined Ascent's ownership" in or around December 2019).

Prime's point is that the Complaint fails to allege any specific Prime conduct that pre-dates March 27, 2019 and that meets the requirements of a "continuing" violation. For example, the Complaint does not contain a single specific allegation of any instance in which Prime negotiated a rebate agreement with a specific manufacturer that pre-dated March 27, 2019. Instead, the best the State can do is to point to a generic, group-pleaded allegation that "Defendants' actions as described in the Complaint are continuous and inflict continuing and accumulating harm." *Id.* at PageID 1345. Such a bare-bone legal conclusion cannot provide any basis for a claim against Prime for conduct pre-dating the limitations period. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) ("Conclusory allegations, or legal conclusions masquerading as factual allegations, will not suffice" (citation omitted)); *Total Benefits Planning Agency*, 552 F.3d at 437 (rejecting "group" allegations pleaded generally against Defendants in affirming dismissal). As a result, to the extent any Valentine Act claim against Prime survives dismissal, it should be limited to conduct from March 27, 2019 forward.

## III. PLAINTIFF FAILS TO STATE AN UNJUST ENRICHMENT CLAIM

Prime agrees with the State that Ohio unjust enrichment law requires a plaintiff to plead "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Wright v. City of Dayton*, 814 N.E.2d 514, 520 (Ohio Ct. App.

14

2004); *see also Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).  The State's problem is that it has not sufficiently pleaded these elements; indeed, it cannot plead these elements, based on the State's theory of its case.

Prime pointed out that the Complaint identifies no specific benefit that the State (or more precisely, those on whose behalf the State claims to be acting) conferred on Prime.  This pleading failure is fatal to the unjust enrichment claim.  Motion, ECF No. 76, PageID 2652-53.  Prime did not, as the State contends, argue that an unjust enrichment claim requires privity of contract.  The State's cases are therefore inapposite.  Opposition, ECF No. 87 at PageID 2785.  Instead, Prime observed that the State is acting under its *parens patriae* authority, and that authority is limited to the claims that Ohioans could bring.  Ohioans are indirect purchasers since they do not buy prescription drugs directly from Prime.  And Ohio law makes clear that an unjust enrichment claim requires that the plaintiff (or here, the Ohioans whose rights the State claims to be vindicating) confer the benefit on the defendant: "an indirect purchaser cannot assert a claim for unjust enrichment against a defendant without establishing a benefit had been conferred upon that defendant *by the purchaser*."  *Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 777 (Ohio Ct. App. 2021) (emphasis added) (citations omitted); *see also Johnson*, 834 N.E.2d at 799 (affirming dismissal of unjust enrichment claim where plaintiff did not confer a benefit on defendant).

Here, the Complaint fails to specify any benefit conferred on Prime *by the Ohioans* for whom the State seeks redress.  Apparently recognizing this problem, the State cites Complaint paragraphs that it claims allege a benefit that Ohioans conferred on Prime.  Opposition, ECF No. 87 at PageID 2878 (citing Compl., ECF No. 12 at PageID 1318, 1320).  But those allegations do nothing more than identify Prime as a PBM, and allege it provides undefined "PBM Services" to Ohioans; they identify no benefit conferred on Prime.  The remainder of the State's argument relies

15

on bare-bones, group-pleaded legal conclusions, which as already discussed, cannot support a claim against Prime. *See Travel Agent,* 583 F.3d at 903; *Total Benefits*, 552 F.3d at 437.

Finally, in other briefing before this Court for this matter, the State effectively destroyed its unjust enrichment claim against *any* PBM. Specifically, in its opposition to Humana's motion to dismiss, the State identifies the benefit conferred on a PBM in the context of its unjust enrichment claim as "higher rebates." Opposition to Humana Mtn. to Dismiss, ECF No. 86 at PageID 2765. But a "higher rebate" is *not* a benefit that *Ohioans* conferred on Prime (or any other PBM); it is simply a discount that the PBM may contract for from the pharmaceutical manufacturer to lower the net price of the prescription drug for its clients. In other words, under its own theory, the State has pleaded itself out of an unjust enrichment claim against *any* PBM defendant, including Prime. The unjust enrichment claim should therefore be dismissed.

## IV.    THE CIVIL CONSPIRACY COUNT FAILS TO STATE A CLAIM

Prime offered four independent reasons that Count VII, the Complaint's civil conspiracy claim against all Defendants, should be dismissed: (1) insufficient allegations of an agreement; (2) failure to plead malice, as required by Ohio law, (3) the lack of an underlying predicate act; and (4) a failure to allege damages, as required by Ohio law. Motion, ECF No. 76 at PageID 2653-54.

By their nature, the first and third arguments rise and fall with the Court's analysis of the Complaint's Valentine Act claims (which should be dismissed, as argued above). As to the second and fourth arguments, the State's Opposition offers no response. Each of these failures independently requires dismissal of Count VII. *See Schrock v. D & N Dev., Inc*., 1995 WL 495488, at *2 (Ohio Ct. App. June 28, 1995); *Pickle v. Swinehart*, 166 N.E.2d 227, 229 (Ohio 1960) (pleading malice requires a "'state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another'"); *Avery v. City of Rossford*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001) (affirming dismissal of civil conspiracy claim where

16

plaintiff did not allege actual damages from the conspiracy); *see also Humphrey*, 279 Fed. Appx. at 331 (arguments not raised in opposing motion are waived); *Doe, 5*07 F.3d at 1007 (same); *Choice Hotels*, WL 5935646, at \*9 (same). Indeed, with respect to its failure to plead damages, the State actually admits that it *chose* not to seek damages.[4] Opposition, ECF No. 87 at PageID 2781 (the State "did not bring" a claim "for damages suffered by individual Ohioans"). This concession alone requires dismissal of Count VII.

## V.    PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED

In its opening brief, Prime pointed out that the Complaint fails to allege the basic elements required to seek injunctive relief and that this failure warrants dismissal of the demand for injunctive relief as to any claim that survives against Prime. *See* Motion, ECF No. 76 at PageID 2654-55 (citing *eBay v. MercExchange*, LLC, 547 U.S. 388, 391 (U.S. 2006) and *U.S. v. Miami University*, 294 F. 3d 797, 816 (6th Cir. 2002)). In response, the State incorrectly argues that Prime focused "on the merits of the ultimate award of injunctive relief." Opposition, ECF No. 87 at PageID 2790. Far from it: consistent with authority that the State itself relies on, Prime focused on "what is legally necessary in order to sufficiently plead a demand for injunctive relief." *Velez v. Cuyahoga Metro. Hous.*, 2014 U.S. Dist. LEXIS 27480, at \*17 (N.D. Oh. Mar. 3, 2014). The Complaint does not meet the "legally necessary" standard to sustain a demand for injunctive relief. Accordingly, that prayer for injunctive relief should be dismissed.

## CONCLUSION

The State, like any other plaintiff, is required to comply with the pleading rules in asserting any claim against Prime. The State has not satisfied those pleading rules. Accordingly, the State's

---

[4] In its attempt save its request for "disgorgement" under the Valentine Act and avoid the indirect purchaser bar recognized in *Johnson*, the State admits it *chose* not to seek damages in this case.

Complaint should be dismissed in its entirety.  Furthermore, the State has not requested leave to amend, and given the State's failure to offer examples of specific facts that it could plead if given such leave, Prime respectfully requests that, as to Prime, the Court dismiss the Complaint in its entirety with prejudice.

Dated:  December 1, 2023                    Respectfully submitted,

                                            DORSEY & WHITNEY LLP

                                            */s/ Jaime Stilson*_____
                                            Jaime Stilson *(pro hac vice)*
                                            Michael A. Lindsay *(pro hac vice)*
                                            Nicholas J. Bullard *(pro hac vice)*
                                            50 South Sixth Street, Suite 1500
                                            Minneapolis, MN 55402
                                            (612) 340-2600
                                            stilson.jaime@dorsey.com
                                            lindsay.michael@dorsey.com
                                            bullard.nick@dorsey.com

                                            Maral J. Shoaei *(pro hac vice)*
                                            Dorsey & Whitney LLP
                                            167 Hamilton Avenue, Suite 200
                                            Palo Alto, CA 94301
                                            (650) 857-1717
                                            shoaei.maral@dorsey.com

                                            Matthew L. Jalandoni (0087074)
                                            Benjamin Reese (0096108)
                                            FLANNERY | GEORGALIS LLC
                                            175 South Third St., Suite 1060
                                            Columbus, OH 43215
                                            (380) 444-6027
                                            mjalandoni@flannerygeorgalis.com
                                            breese@flannerygeorgalis.com

                                            *Counsel for Prime Therapeutics LLC*

18

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to the current represented parties to this action by operation of the

Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jaime Stilson*
Jaime Stilson

*Counsel for Prime Therapeutics LLC*