## 1UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, ex rel. DAVE YOST ATTORNEY GENERAL OF OHIO<br><br>*Plaintiff,*<br><br>v.<br><br>ASCENT HEALTH SERVICES LLC; EXPRESS SCRIPTS, INC.; CIGNA GROUP; EVERNORTH HEALTH, INC.; PRIME THERAPEUTICS LLC; HUMANA PHARMACY SOLUTIONS, INC.; HUMANA INC.<br><br>*Defendants.* | Civil Action No. 2:23-cv-1450<br>Judge Michael H. Watson<br>Magistrate Judge Chelsey M. Vascura<br><br>**ORAL ARGUMENT REQUESTED** |

### REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff's Opposition is an exercise in diversion. Rather than confront the arguments head on from Ascent Health Services LLC ("Ascent"), Express Scripts, Inc. ("Express Scripts"), The Cigna Group ("Cigna"), and Evernorth Health, Inc.'s ("Evernorth") (collectively, "Moving Defendants") Motion to Dismiss, Plaintiff invites this Court to ignore well-settled and controlling precedent and engage in a novel and wholly unnecessary statutory (re)construction. The Court should decline the invitation, follow controlling precedent, and dismiss the Complaint.

Plaintiff's Valentine Act claims (Counts I & III) fail for many independent reasons, none cured by the Opposition (ECF No. 88). First, it is hornbook law that Cigna cannot conspire with itself in violation of the antitrust laws—that is dispositive of Count I. Second, Plaintiff fails to allege an illegal agreement, a relevant market, market power, anticompetitive effects, or antitrust

injury—each failing is dispositive for both Counts I and III.  Finally, Plaintiff is barred from seeking disgorgement by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

In an attempt to sidestep these fatal pleading flaws, the Opposition seeks to have the Court disregard *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and set aside nearly a century of precedent applying federal Sherman Act reasoning to Valentine Act claims.  Such novel arguments are unavailing because they are directly contrary to controlling precedent—they cannot save Count I or Count III from dismissal.

Plaintiff's Deceptive Trade Practices Act ("DTPA") claim (Count IV) also is not saved by the Opposition.  The Opposition does not change the fact that Plaintiff lacks standing under the DTPA.  The DTPA does not include a provision authorizing the Plaintiff to bring a DTPA claim as *parens patriae*, nor can Ohio satisfy the requirements for *parens patriae* standing at common law.  Moreover, the alleged injury to Ohio Plan Sponsors falls outside the "zone of interests protected by the law."  (Moving Defendants' Motion to Dismiss ("Mot."), ECF No. 78 at PAGEID 2717–19.)  And even if Plaintiff did have standing, Count IV would still fail because Plaintiff does not sufficiently plead facts to support its claim that Express Scripts "knowingly and willfully made repeated misrepresentations."  (*Id.* at PAGEID 2722–23.)

Finally, the Opposition does not cure the pleading failures of the remaining claims against Moving Defendants: Declaratory and Injunctive Relief (Count V), Unjust Enrichment (Count VI), and Civil Conspiracy (Count VII).  Nor does it point to any allegations connecting Cigna and Evernorth to any claims.  The Complaint should be dismissed.

## I.    Count I Fails for Multiple Independent Reasons

### A.  *Copperweld* Bars Count I

As explained in Moving Defendants' Motion, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) bars Count I's conspiracy claim against Cigna, its wholly-owned

subsidiary Evernorth, and Evernorth's wholly-owned subsidiary Express Scripts.  (Mot., ECF No. 78 at PAGEID 2698–99).  Plaintiff concedes that *Copperweld* bars conspiracy claims between a wholly-owned subsidiary and its parent corporation.  (Plaintiff's Opposition ("Opp'n"), ECF No. 88 at PAGEID 2804–05; 2818–19.)  Undeterred, Plaintiff argues: (1) the Complaint contains "no allegation that Express Scripts is wholly-owned by either Cigna or Evernorth," alleging only that "Express Scripts is a subsidiary of Evernorth Health, Inc. . . . which is a wholly owned subsidiary of Cigna Group" (Opp'n, ECF No. 88 at PAGEID 2798); and (2) that *Copperweld*'s bar on intra-corporate conspiracies is inapplicable to the Valentine Act.  (*Id.* at PAGEID 2799–2804.)  Plaintiff is wrong on both arguments.

First, Express Scripts is indisputably a wholly-owned subsidiary of Evernorth, which is a wholly-owned subsidiary of Cigna; *Copperweld* thus bars Count I.  *See, e.g.,* Express Scripts Corp. Disclosure Statement, ECF No. 5 at PAGEID 1284 ("The Cigna Group, via a wholly-owned subsidiary, is *the* parent of Express Scripts, Inc.") (emphasis added); Declaration of Daniel J. Howley, ECF No. 42-2 at PAGEID 1872 (attaching Cigna's 2023 Form 10-Q stating that "Evernorth, [is] *the* parent company of Express Scripts") (emphasis added).  The Complaint does not allege anything to the contrary; nor could it, at least, not consistent with Federal Rule of Civil Procedure 11.  Indeed, the Complaint alleges Evernorth and Express Scripts are subsidiaries of Cigna.  That the Complaint merely omitted the words "wholly-owned" does not allow for the unsupported and incorrect factual inference that Express Scripts is *not* a wholly owned subsidiary.[1]  *See, e.g.*, *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)

---

[1] Notably, contrary to Plaintiff's suggestion, *Copperweld* is not limited to conspiracy allegations concerning wholly-owned subsidiaries.  It also applies to situations involving less than whole ownership.  *See, e.g.*, *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 194 (2010).

(for purposes of ruling on a motion to dismiss "[w]e need not accept as true . . . unwarranted factual inferences.").

Second, *Copperweld* applies to the Valentine Act.  Both Ohio state and federal courts have consistently so held.[2]  (Mot., ECF No. 78 at PAGEID 2698–99) (citing *Nilavar v. Mercy Health Sys. W. Ohio*, 142 F. Supp. 2d 859, 890 (S.D. Ohio 2000); *In re Title Ins. Antitrust Cases*, 702 F. Supp.2d 840, 878, 906–08 (N.D. Ohio 2010)); *see also*, *J.G. Ewing Sewer Cntrs., Inc. v. Toledo, Lucas C.P.*, 2014 Ohio Misc. LEXIS 46 (Apr. 16, 2014).[3]  Plaintiff ignores those cases; but this Court should not.  *Copperweld* is dispositive of Count I and dismissal is appropriate.

### B.  The Sherman Act Guides Interpretation of Count I

Contrary to Plaintiff's contention, the Sherman Act provides substantive guidance for Count I.  (Mot., ECF No. 78 at PAGEID 2698.)  Plaintiff erroneously contends that the "Sherman Act does not determine what conduct the Valentine Act reaches" because "[t]he Ohio General Assembly did not pattern the Valentine Act after the Sherman Act."  (ECF No. 88 at PAGEID 2801.)  But, as Plaintiff itself acknowledges, that contention is contrary to nearly 100 years of state and federal precedent.[4]  (*Id.* (conceding that the Ohio Supreme Court since at least

---

[2] Indeed, even Texas law, which Plaintiff erroneously contends should guide this Court's interpretation of the Valentine Act, (*see* Opp'n ECF No. 88 at PAGEID 2802-04) also recognizes the ban on intra-corporate conspiracy claims.  *See, e.g.*, *Hood v. Tenneco Tex. Life Ins. Co.*, 739 F.2d 1012, 1016 (1984) ("[A]s expressed by the Supreme Court in *Copperweld*[,] Texas courts have held that a statutory combination or concerted action in violation of the state antitrust laws cannot occur unless those combining are independent and in competition with one another.").
[3] Plaintiff cites *State ex rel. Denman v. Nat'l Cash Reg. Co.*, 13 Ohio C.C. (n.s.) 73 (Ohio Cir. Ct. Franklin Cty. 1910), for the proposition that the Valentine Act permits intra-corporate conspiracies.  *Denman*, however, was decided nearly 75 years prior to *Copperweld*, and Courts since have repeatedly recognized the intra-corporate conspiracy bar.  "The common law is not static.  It is dynamic and it must continue to evolve to keep up with the times."  *Gallimore v. Child.'s Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 254, 617 N.E.2d 1052 (Ohio 1993).
[4] That, according to Plaintiff, the Valentine Act bares similarities to Texas's 1889 antitrust statute is of little consequence because, as Ohio Courts have recognized, "the Supreme Court of

4

1926 has held that the Valentine Act was patterned on the Sherman Act and that the Valentine Act is to be interpreted in light of federal judicial construction of the Sherman Act); *see also* Mot., ECF No. 78 at PAGEID 2698 (citing Ohio Supreme Court, Sixth Circuit, and Southern District of Ohio precedent holding same).) Importantly, Plaintiff's *own* prior interpretations of the Valentine Act state that it "was patterned on the federal Sherman Act." 1996 Op. Ohio Att'y Gen. No. 71,446, 1996 WL 35039340; *see also* 1980 Op. Ohio Att'y Gen. No. 63,585, 1980 WL 669551 ("The Ohio Supreme Court has consistently stated that federal precedent should be applied when interpreting Ohio's antitrust law since the Valentine Act was patterned after § 3 of the Sherman Act.").

Plaintiff does not address its prior positions about how the Ohio Supreme Court has "consistently" held against what it now argues. Instead it seeks to undermine that longstanding, binding precedent as being based on "erroneous dicta" set forth in *List v. Burley Tobacco Growers' Co-op. Ass'n*, 114 Ohio St. 361 (1926). (Opp'n, ECF No. 88 at PAGEID 2801.) But the statements in *List* involving the Sherman Act's applicability to the Valentine Act were not dicta. The Court in *List* sought to determine whether conduct fell under the Valentine Act, and in doing so, determined that "[a] discussion of the federal act and some of the federal authorities cannot be avoided, because it has been seriously urged that when the Valentine Law was enacted in Ohio, the Ohio Legislature adopted the judicial construction already placed upon the federal act by the federal courts, and that interpretation is treated as incorporated therein." *Id.* at 370. Neither *List* nor the precedent following it equivocates—"federal policy and federal cases interpreting the Sherman Act *must be* examined to ascertain the meaning of the Valentine Act[.]"

---

Ohio and the [S]upreme [C]ourt of Texas construe th[eir] antitrust legislation along widely diverging lines." *State ex rel. Taylor v. Ross*, 16 Ohio Dec. 704, 717 (Ohio Ct. Com. Pl. 1906).

*Schweizer v. Riverside Methodist Hosps.*, 108 Ohio App.3d 539, 542, 671 N.E.2d 312 (Ohio Ct. App. 1996) (emphasis added); *see also Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 795 (Ohio 2005) ("Ohio has long followed federal [antitrust] law in interpreting the Valentine Act."). This Court should likewise follow federal antitrust law in interpreting the Valentine Act.

### C. *Twombly* is the Pleading Standard and Count I Fails Under It

Plaintiff's argument that *Twombly's* plausibility pleading standard is inapplicable to Plaintiff's Count I Valentine Act claim is a non-starter. (Opp'n, ECF No. 88 at PAGEID 2805–06.) Plaintiff contends that § 1331.09 of the Valentine Act supplies the applicable pleading standard here (*id.*), but that provision, pertaining only to criminal indictments, provides no such applicable standard at all. By its terms, § 1331.09 pertains solely to indictments—indeed, it is titled "Contents of Indictment," and its text starts with "[i]n an **indictment for an offense** provided for in sections 1331.01 to 1331.14." Ohio Rev. Code §1331.09 (emphasis added). Nowhere does the provision state or imply that it is applicable to civil actions.

The Supreme Court of Ohio and the Sixth Circuit have consistently and correctly applied the standard state (for state actions) or federal (for federal actions) pleading standards to civil Valentine Act claims—not § 1331.09. *See, e.g., Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (applying standard federal *Twombly* pleading standard to Valentine Act claim); *Johnson*, 834 N.E.2d at 799 (applying standard "no set of facts" Ohio pleading standard to Valentine Act claim).[5] Moreover, courts within the Sixth Circuit have made clear that the

---

[5] Plaintiff can only cite to one intermediate state court case from 1906 allegedly standing for the proposition that § 1331.09 applies to civil actions. (Opp'n, ECF No. 88 at PAGEID 2805-06 (citing *Goode v. Ohio Valley Druggists' Ass'n*, 16 Ohio Dec. 586, 587 (Ohio Ct. Com. Pl. Hamilton Cty. 1906).) That 1906 case, however, dealt with an earlier version of the statute that predated § 1331.09. Furthermore, that case has not been followed—nor even cited—in subsequent binding authority applying *Twombly*, not § 1331.09, to civil Valentine Act claims. It is also notable that Plaintiff contends the Court is bound by this outdated intermediate court precedent but elsewhere argues this Court may ignore current Ohio Supreme Court precedent.

federal pleading standard applies to state law claims pending in federal court, even where the applicable state law provides for a different—including a more liberal—standard of review. *See, e.g.*, *Golden Eagle Res. II, LLC v. Rice Drilling D, LLC*, No. 2:22-cv-02374, 2023 WL 1927799, at *8 (S.D. Ohio Feb. 10, 2023) ("The federal rules, including the federal pleading standard, apply."). Once *Twombly* is applied—as it must be—Plaintiff's Count I fails.[6]

### i. Count I Fails Because Plaintiff Does Not Allege Facts to Support a Plausible Illegal Agreement Between Cigna and Evernorth

Moving Defendants have not "conveniently overlooked" factual allegations of a conspiracy between Express Scripts, Cigna, and Evernorth. (Opp'n, ECF No. 88 at PAGEID 2807; 2729–30.) They simply do not exist. (*See* Mot., ECF No. 78 at PAGED 2700–01.)

Plaintiff attempts to cure Count I by rewriting Cigna and Evernorth into the Complaint. Plaintiff cites just two of the few sentences in the Complaint actually referencing Cigna and Evernorth—neither sufficing to establish a conspiracy. (Opp'n, ECF No. 88 at PAGEID 2807; *see also* ECF No. 42-1 at PAGEID 1791–93.) First, Plaintiff points to its allegation that "Cigna and its subsidiary Evernorth participate in their own capacities in Express Scripts' business and operations," (Compl. ¶ 66), but that general statement in no way suggests that they participated in any alleged unlawful conspiracy. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d at 906 (dismissing corporate parents where complaint did "not sufficiently allege any concerted action on their part"). Plaintiff next points to its conclusory allegation that "Express Scripts, Cigna, and Evernorth have engaged in a combination . . . to fix and raise prices of numerous drugs," (Compl. ¶ 205), but as set forth in the Motion, (Mot., ECF No. 78 at PAGEID 2697–2706), this wholly unsupported conclusion is also insufficient to establish a conspiracy under *Twombly*.

---

[6] Plaintiff does not dispute that the rule of reason, not *per se*, analysis is applicable to Count I under a Sherman Act analysis. (*See* Mot., ECF No. 78 at PAGEID 2700–04). Plaintiff, however, fails to set forth facts sufficient to allege a plausible rule of reason claim.

The remaining paragraphs cited by Plaintiff do not reference Cigna and Evernorth at all. Plaintiff points to paragraphs concluding that *all* Defendants, including those not named in Count I, conspired by "forming and carrying out agreements *with manufacturers* to fix prices for prescription drugs."  (Opp'n, ECF No. 88 at PAGEID 2807 (emphasis added).)  But nowhere in the Complaint does Plaintiff allege that Cigna and Evernorth had any role in contracting, or even interacting, with these unnamed non-Defendant drug manufacturers, let alone entering into agreements with them to fix prices.  More fundamentally, these allegations, pertaining to alleged "agreements with manufacturers," (Compl. ¶¶ 131, 193–94), do not pertain to any agreement between Express Scripts, Cigna, and Evernorth.  (Mot., ECF No. 78 at PAGEID 2697–2705.) Count I fails to set forth a plausible factual basis for a conspiracy among Express Scripts, Cigna, and Evernorth, and thus, dismissal is warranted.[7]

### ii.  Count I Fails Because Plaintiff Does Not Allege a Relevant Market

Contrary to the Opposition, the Complaint does not contain facts sufficient to allege a relevant market.  (Opp'n, ECF No. 88 at PAGEID 2810.)  As noted in the Motion, the Complaint does not identify a relevant market and leaves a reader guessing as to the relevant product market definition and the relevant geographic market definition.  (Mot., ECF No. 78 at PAGEID 2703.) This pleading failure requires dismissal.  *See, e.g., Wagner v. Circle W. Mastiffs*, 732 F. Supp. 2d 792, 804 (S.D. Ohio 2010) ("[A]n insufficiently pled or totally unsupportable proposed market will necessitate a dismissal") (internal citations omitted); *Arnold v. Petland, Inc.*, No. 2:07-cv-01307, 2009 WL 816327, at *7 (S.D. Ohio Mar. 26, 2009) (Watson, J.) (dismissing antitrust

---

[7] Even if *Twombly* was not the correct standard and Ohio Rev. Code §1331.09 was (it is not), Count I would still fail because the Complaint does not allege any conspiracy, trust, or combination among Express Scripts, Cigna, or Evernorth and has not alleged that they "acted with or in pursuance of" any conspiracy "or assisted in carrying out its purposes."  Ohio Rev. Code § 1331.09; (Mot., ECF No. 78 at PAGEID 2697–2704; 2708–13).

claim for failure to plead a relevant market). Given the Complaint does not even identify what relevant market is at issue, it necessarily fails to allege a relevant market in terms of reasonable interchangeability and cross-elasticity of demand. *See, e.g.*, *Wagner*, 732 F. Supp. 2d at 803–04 ("antitrust claims suffer from a fatal deficiency [where] Plaintiff fails to adequately allege a relevant market . . . [including] 'Reasonable interchangeability' . . . and/or . . . 'cross-elasticity'") (citing *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 917 (6th Cir. 2009)).

Plaintiff now, for the first time, lets Moving Defendants know that Plaintiff believes that the relevant market is "the market for PBM services" in Ohio. (Opp'n, ECF No. 88 at PAGEID 2810.) Plaintiff's Opposition cherry-picks allegations in its Complaint to cobble together this "market"—namely, that (1) Express Scripts markets its PBM services in Ohio (Compl. ¶ 13); (2) that it participates in but does *not* control the majority of rebate negotiations in Ohio (Compl. ¶ 71); and (3) that it somehow stifles undefined competition and raises drug costs it does not set. (Compl. ¶¶ 12, 192.) But none of these scattered allegations cure the fact the Complaint never explicitly, or even implicitly, specifies a relevant antitrust market and fails to define any "market" in terms of reasonable interchangeability or cross-elasticity of demand. *See, e.g.*, *Wagner*, 732 F. Supp. 2d at 803–04. Indeed, the Complaint fails to even identify what services comprise the supposed "market" for "PBM Services," what substitutes there are for each of those services, who the competitors are, or why the state lines of Ohio are relevant considerations for any those services. Nor does it explain how non-PBMs, such as Cigna and Evernorth are part of the alleged "market." Simply put, neither Plaintiff's allegations in its Complaint nor its *post hoc* effort to allege a relevant antitrust market suffice.

### iii.  Count I Fails Because Plaintiff Does Not Allege Market Power or Anticompetitive Effects

Plaintiff fails to sufficiently plead market power and anticompetitive effects within any market.  (Mot., ECF No. 78 at PAGEID 2704.)  Plaintiff wrongly claims it did allege market power and anticompetitive effects, and points to the allegations in its Complaint that Express Scripts: (1) is among the largest PBMs; (2) strives to lower drug prices, "[b]y leveraging its control over formulary placement" and "extract[ing] higher rebates from manufacturers"; and (3) harms retail pharmacies and Ohio's uninsured, underinsured, and those with co-pays based upon a percentage of list prices by somehow raising the list prices of drugs.  (Opp'n, ECF No. 88 at PAGEID 2810–11.)  These allegations do not rise to the level of alleging that Express Scripts has market power in any relevant market or was responsible for any purported anticompetitive effects—indeed, the Complaint admits that it is pharmaceutical manufacturers who set drug prices.  (Compl. ¶¶ 3, 14, 107); *see Arnold*, 2009 WL 816327, at *8 (dismissing for the additional reason of a failure to allege market power).  Moreover, there are no allegations of Express Scripts' market share in the supposed "PBM Market" in Ohio nor any other facts alleged that would provide a basis for a conclusion that Express Scripts, much less all the Defendants in Count I collectively had the ability to raise price and restrict output in that "market."  *Dickson v. Microsoft Corp.*, 309 F.3d 193, 219, n.17 (4th Cir. 2002) ("[T]he relevant issue is whether the *conspiracy* had market power . . . not whether [any] defendant . . . had market power").

### iv.  Count I Fails Because Plaintiff Has Not Pled Antitrust Injury

Plaintiff does not dispute that it has not alleged antitrust injury, another necessary element of Count I.  It insists instead that "[t]he antitrust injury doctrine has no application to this proceeding," purportedly because Plaintiff brings this case "for damages as a result of injury to persons or property."  (Opp'n, ECF No. 88 at PAGEID 2812–13.)  Plaintiff's argument is

10

unsupported by precedent[8] and confuses general injury with antitrust injury, arguing that it need not "demonstrate injury to *persons or property*." (Opp'n, ECF No. 88 at PAGEID 2813 (emphasis added).) But antitrust injury is a distinct concept, requiring a showing of harm to *competition*. (Mot., ECF No. 78 at PAGEID 2704–06; *see also Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 334, 340 n.8 (1990) (explaining distinction between injury generally and antitrust injury). Antitrust injury must be plausibly plead to sustain a Valentine Act claim. *Id.* 340; *see also, NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) ("a 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough") (citing *Twombly*, 550 U.S. at 557); *Emanuel's LLC v. Restore Marietta, Inc.*, 2023-Ohio-147, ¶ 32 (Ohio Ct. App. 2023) ("To establish standing to assert a claim under the Valentine Act, a plaintiff must prove the existence of antitrust injury[.]") (internal citations omitted). Plaintiff's disregard of this requirement is wrong; Count I should be dismissed because it fails to plead antitrust injury.

### D. *Illinois Brick* Bars Plaintiff's Ability to Seek Disgorgement for Count I

*Illinois Brick* applies equally to disgorgement as it does to damages, and Plaintiff's bald assertion that *Illinois Brick* is "irrelevant" misses the mark. Importantly, Plaintiff does not dispute that it is suing on behalf of indirect purchasers or that Ohio follows the *Illinois Brick* doctrine, limiting indirect purchasers' ability to sue for monetary relief under the Valentine Act. (Mot., ECF No. 78 at PAGEID 2706–07, 2716.) Rather, Plaintiff improperly attempts to evade *Illinois Brick*'s bar by claiming it does not apply to indirect purchasers seeking disgorgement. (Opp'n, ECF No. 88 at PAGEID 2813–14.)

---

[8] Plaintiff cites to *Needles v. Bishop & Babcock*, for the proposition that it does not need to plead injury to a person or plaintiff to sustain a Valentine Act claim, but that 1904 case supports that antitrust injury must be pled. 14 Ohio Dec. 445, 448 (Ohio Ct. Com. Pl. Franklin Cty. 1904) ("[T]o render such combinations void as against public policy is not necessary that evil intent or actual injury to the public be shown, but it is sufficient that the inevitably tendency of the combination is to control prices to the detriment of the public.").

Courts deciding Valentine Act claims have plainly held that *Illinois Brick* bars indirect purchasers, including the State of Ohio suing on their behalf, from seeking disgorgement. *See, e.g., In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp. 3d 672, 678–79 (E.D. Pa. 2022) (granting motion to dismiss plaintiff states', including Ohio's, claims for disgorgement on behalf of indirect purchasers on the basis of *Illinois Brick*, explaining allowing for disgorgement would create an improper "end run around the indirect-purchaser rule"); *Fed. Trade Comm'n v. Mylan Labs.*, 62 F. Supp. 2d 25, 40–42, 50 (D.D.C. 1999) ("Ohio . . . may not seek restitution and disgorgement on behalf of indirect purchasers."). This is because allowing indirect purchasers to seek disgorgement would "implicate the concern for duplicative recoveries articulated by the Supreme Court in *Illinois Brick*." *Id.* at 41–42.

Plaintiff cites no authority holding that indirect purchasers have standing to seek disgorgement under the antitrust laws. The authority Plaintiff does cite is inapposite. (Opp'n, ECF No. 88 at PAGEID 2813–14.) First, Plaintiff cites *State ex rel. Dann v. Am. Int'l Grp., Inc.*, 2008 Ohio Misc. LEXIS 320, at *10–11 (Ohio Ct. Com. Pl. Cuyahoga Cty. July 30, 2008), for the proposition that "Section 109.81(A) of the Ohio Revised Code has been expressly held to permit the Attorney General to seek disgorgement under the Valentine Act." (Opp'n, ECF No. 88 at PAGEID 2814.) But neither *Dann* nor Section 109.81(A) address or authorize the Attorney General's ability to seek disgorgement on behalf of *indirect* purchasers. Plaintiff also cites two cases involving the ability of indirect purchasers to seek an ***injunction***. (Opp'n, ECF No. 88 at PAGEID 2813–14 (citing *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003) (pertaining to the ability of indirect purchasers to seek an injunction) and *Pecover v. Elecs. Arts Inc.*, 633 F. Supp. 2d 976, 979–80 (N.D. Cal. 2009) (same)).) But injunctive relief is not a monetary remedy issued for past conduct, and thus, "does not implicate the concern for

duplicative recoveries articulated by the Supreme Court in *Illinois Brick.*"  *Mylan*, 62 F. Supp. 2d at 41.  Courts routinely distinguish the ability of indirect purchasers to seek "forward-looking equitable remedies," such as injunctions and divestiture, and the inability of indirect purchases to seek "backward-looking remedies (such as restitution or disgorgement)."  *In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp. 3d at 679.  This Court should do the same.

## II.     Count III Fails Under Each Step of the Valentine Act Analysis

### A.  Count III Fails to Sufficiently Allege a Conspiracy Under *Twombly*[9]

Count III does not plausibly allege a conspiracy among Express Scripts, Prime Therapeutics LLC ("Prime"), Humana Pharmacy Solutions, Humana Inc., and Ascent, and the Opposition does not establish otherwise.  (Mot., ECF No. 78 at PAGEID 2708–09 (explaining that to allege a conspiracy, Plaintiff must show direct or circumstantial evidence followed by evidence of plus factors).)  The Opposition rephrases cherry-picked paragraphs from the Complaint to say only that Express Scripts and Prime formed Ascent and carried out business as a group purchasing organization.  (Opp'n, ECF No. 88 at PAGEID 2815).  The Complaint, however, contains no plausible allegations of a conspiracy whatsoever, and Plaintiff's speculations that the formation of a GPO could "provide[] an effective price-fixing tool," (Compl. ¶¶ 187–88), coupled with allegations of parallel conduct is not enough to state a claim.  *See Twombly*, 550 U.S. at 554, 556–57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy").

---

[9] For the reasons stated above for Count I, supra Part I, both *Twombly* and the Sherman Act are applicable to Count III.

Plaintiff alleged neither direct nor circumstantial evidence of a price fixing conspiracy in the Complaint, and thus should be dismissed. (*See* Mot., ECF No. 78 at PAGEID 2709–13.)[10]

Plaintiff goes further to suggest that it has pled a *per se* illegal conspiracy between Prime and Express Scripts simply because its allegations involve a GPO. Curiously, Plaintiff does not argue in its Opposition to Prime's Motion to Dismiss that it did not allege a *per se* claim in connection with Count III. (*See* Opp'n to Prime, ECF No. 87 at PAGEID 2778–79.) In any event, the Complaint does not allege a *per se* conspiracy.

Plaintiff's citation to federal guidelines that suggest purchasing cooperatives "*may provide an opportunity*" for collusion does not change this. (Opp'n, ECF No. 88 at PAGEID 2817 (emphasis added).) Nor do Plaintiff's citations to *other* cases where a complaint actually alleged *facts* supporting a plausible conspiracy. (*Id.* at 2817–18.) Plaintiff has not cited any authority supporting the notion that the existence of a group purchasing organization *alone* (and there are at least hundreds of such organizations) is a fact sufficient to allege *per se* price fixing, and such a position is contrary to controlling precedent. (Mot., ECF No. 78 at PAGEID 2714 (citing *Nw. Wholesalers Stationers, Inc. v. Pac Stationary Printing Co.*, 472 U.S. 284, 295 (1985) ("[P]urchasing cooperatives . . . are not a form of concerted activity characteristically likely to result in predominantly anticompetitive effects. Rather, such cooperative arrangements would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive") (internal citations omitted); *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 343 (7th Cir. 2022) (explaining allegations that parties followed GPO

---

[10] Even if *Twombly* was not the correct standard, and Ohio Rev. Code §1331.09 was (it is not), Count III would still fail because the Complaint does not allege any conspiracy, trust, or combination among Express Scripts, Cigna, or Evernorth and has not alleged that they "acted with or in pursuance of" any conspiracy "or assisted in carrying out its purposes." Ohio Rev. Code § 1331.09; (Mot., ECF No. 78 at PAGEID 2697–2704; 2708–13).

agreement are not enough to allege unlawful conspiracy); *Allied Ortho. Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1003 (9th Cir. 2010) (same).[11]

### i. Count III Fails to Plead a Relevant Geographic Market, Anticompetitive Effects, Market Power, or Antitrust Injury

Plaintiff's Count III should also be dismissed because it fails to plead geographic or product markets, anticompetitive effects, market power, and antitrust injury for the reasons explained above and in the Motion. (*See* supra Part I.)

### B. *Copperweld Bars* Count III's Allegations of a Conspiracy Between Express Scripts and Ascent

Plaintiff is incorrect that *Copperweld* only applies to a "wholly-owned subsidiary and its parent corporation," and thus, does not implicate Count III's claim of a conspiracy between Express Scripts and Ascent who share Cigna as a corporate parent. (Opp'n, ECF No. 88 at PAGEID 2818–19.) *Copperweld* extends beyond parents and their wholly-owned subsidiaries; "[c]ourts have [also] barred antitrust actions against companies under common ownership or companies that exhibit a unity of interest." *Ky. Speedway*, 588 F.3d at 920. Express Scripts and Ascent both share common majority ownership (Compl. ¶¶ 7, 42)—Express Scripts is owned by Cigna and Ascent's majority shareholder is also owned by Cigna—and exhibit a unity of interest in negotiating drug rebates for Express Scripts. As such, *Copperweld* bars Plaintiff's claim of a conspiracy between them.

---

[11] Plaintiff claims Moving Defendants have "studiously omitted any cases on the misuse of purchasing cooperatives to exchange information among competitors" and that these authorities "have no bearing on the allegations in Count III." (Opp'n, ECF No. 88 at PAGEID 2816–17.) Plaintiff does not, however, cite a single "omitted" case or explain why these cases ought not apply. Plaintiff later cites to a case where an agreement among sugar refiners "together with the allegations made concerning its effects" survived a motion to dismiss. *Mandeville Island Farms v. Am. Crystal Sugar Co.*, 334 U.S. 219, 221–22 (1948). *Mandeville* predated *Twombly* by over 50 years and, unlike in *Mandeville*, Plaintiff here has not sufficiently alleged "a conspiracy with the ultimate object of fixing local retail prices." *Id.* at 236. Nor does *Mandeville* support the application of a *per se* rule in this case.

15

### C. *Illinois Brick* Bars Plaintiff's Disgorgement Claim for Count III

For the reasons stated above with respect to Count I, (supra Part I), *Illinois Brick* also bars Plaintiff's ability to seek disgorgement in connection with Count III.

## III.    Plaintiff's Count IV DTPA Claim is Fundamentally Defective and Must be Dismissed

### A. Plaintiff Lacks Standing to Pursue its DTPA Claim on Behalf of Plan Sponsors

To establish standing, a plaintiff must (i) be "within the zone of interests protected by the law" and (ii) sufficiently allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark Intern., Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 129, 133 (2014); (Mot., ECF No. 78 at PAGEID 2718–19.) The Opposition curiously argues that Ohio Plan Sponsors "are decidedly not consumers for purposes of the DTPA," and thus, according to Plaintiff, it has standing to pursue its DTPA claim on behalf of those plan sponsors. (Opp'n, ECF No. 88 at PAGEID 2820.)[12]  Plaintiff is wrong.  The relevant standing question is not whether Plan Sponsors fall outside of Plaintiff's unclear definition of a "consumer" (they do not), but rather, whether those Plan Sponsors have a claim that falls "within the zone of interests" protected by the Act.  *Lexmark*, 572 U.S. at 131–32 ("plaintiff must allege an injury to a commercial interest in reputation or sales" to come within the law's zone of interests).  Plaintiff does not allege Plan Sponsors have such a claim.

As precedent makes clear, businesses and other "persons engaged in commerce"— whether categorized as consumers or otherwise—fall outside the zone of interests if their alleged injury is not a loss of reputation or sales.  *Lexmark*, 572 U.S. at 131–32 ("Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the [Lanham] Act's aegis.").  That is the case here.  Plaintiff's Complaint does *not* maintain that

---

[12] Notably, Plaintiff's argument relies on language from an entirely *different* statute.  (*Id.*)

Ohio Plan Sponsors compete with Express Scripts.  *POM Wonderful LLC v. Coca-Cola Co.*, 573

U.S. 102, 107 (2014) ("Though in the end consumers also benefit from the Act's proper

enforcement, the cause of action is for competitors, not consumers.").  Nor are there any

allegations that Ohio Plan Sponsors, as non-competitors, suffered "an injury to a commercial

interest in sales or business reputation proximately caused by the defendant's

misrepresentations." *Lexmark,* 572 U.S. at 140.  Ohio Plan Sponsors thus fall outside the zone of

interests the DTPA was designed to protect, and lack standing to assert the DTPA claim in the

Complaint irrespective of whether Plaintiff has the authority to sue on their behalf.

### B.  Plaintiff Cannot Invoke the Common Law *Parens Patriae* Doctrine as a Basis for Standing

Even if Ohio Plan Sponsors *could* bring the DTPA claim in the Complaint (and they

cannot), Plaintiff has not identified any statutory basis for the Attorney General to act on their

behalf.  Absent an explicit statutory basis,[13] Plaintiff's purported exercise of its *parens patriae*

authority must be rooted in a quasi-sovereign interest.  It most certainly is not for the reasons

explained in the Motion.  (*See generally* ECF 78 at PAGEID 2719–21.)

At common law, plaintiff must "allege[] injury to a sufficiently substantial segment of its

population" to successfully establish a quasi-sovereign interest.  *Alfred L. Snapp & Son, Inc. v.*

*P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982).  Plaintiff contends that, to establish a quasi-

---

[13] In Opposition, Plaintiff suggests that, independent of the common law, it is eligible to bring its DTPA claim because "government" and "governmental subdivision" fall within the definition of "person" for purposes of the DTPA.  (Opp'n, ECF No. 88 at PAGEID 2821 (citing Ohio Rev. Code § 4165.01(D)).)  But "[s]imply because the [DTPA] statute does not expressly place any limitation on the type of individuals who can pursue a claim does not mean that none exists." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp.2d 677, 698 (S.D. Ohio 2012).  Critically, this provision does not set aside the overarching requirement that a DTPA claimant must satisfy the "zone of interests" test.  *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, 2019 WL 2468267, at *25 (N.D. Ohio Apr. 1, 2019), *adpt'd in part, overruled in part on other grounds by* 2019 WL 3737023, at *1 (N.D. Ohio June 13, 2019) ("zone of interest" test foreclosed tribal government's Lanham Act claim).

sovereign interest, "there is no requirement that the relief must benefit Ohio residents generally or that 'there must be an injury to more than an identifiable group of individual residents.'" (Opp'n, ECF No. 88 at 2822 (quoting *Ohio v. GMAC Mortgage LLC*, 760 F. Supp.2d 741, 749 (N.D. Ohio 2011)).) In doing so, Plaintiff dismisses the language of *GMAC Mortgage* generally, and wrongly accuses Express Scripts of "mislead[ing] the Court" by citing it. (*Id.* at 2821.) Plaintiff fails to acknowledge, however, that the language to which it objects was lifted directly from the United States Supreme Court's opinion in *Alfred L. Snapp & Son*. *Compare GMAC Mortgage*, 760 F. Supp.2d at 749 *with* 458 U.S. at 607 ("more must be alleged than injury to an identifiable group of individual residents").

Unable to deny the existence of the rule, Plaintiff argues that the substantiality requirement is a mere formality and easily evaded. (Opp'n, ECF No. 88 at PAGEID 2823.) As support for this invitation to linguistic gymnastics, the Opposition contends that, in the same case, the Supreme Court "held that substantiality was satisfied when .03% of Puerto Rico's population was affected by the challenged conduct." (*Id.*) This, however, is a gross mischaracterization of Justice White's opinion for the Court. In *Alfred L. Snapp & Son*, the Court noted the "deliberate efforts to stigmatize the [Puerto Rican] labor force as inferior carry a universal sting" impacting far more than the 787 agricultural workers unlawfully denied work during the 1978 apple harvest in favor of temporary foreign workers. 458 U.S. at 599.

Plaintiff's other authority—*In re Suwinski* and *D.C. v. JTH Tax*—is easily distinguishable. In both, the plaintiff's *parens patriae* standing was not premised solely on the common law, as a state statute *explicitly* authorized the plaintiff to enforce the statute on behalf of consumers "in the public interest." *D.C. v. JTH Tax LLC*, No. 22-3165, 2023 WL 130736, at

18

*5 (D.D.C. Jan. 9, 2023) (D.C. Consumer Protection Procedures Act); *In re Suwinski*, 509 B.R. 568, 575–76 (Bankr. S.D. Ohio 2013) (Ohio Consumer Sales Practices Act).

Contrary to the Opposition, (Opp'n, ECF No. 88 at PAGEID 2821 ("Relying heavily upon a single federal district court decision . . . Express Scripts misunderstands *parens patriae* authority and misleads the Court about it.")), *GMAC Mortgage* is far from alone in holding that a valid *parens patriae* action aims to benefit a state's citizenry "generally." *See, e.g., Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 744 (7th Cir. 2013) ("*Parens patriae* suits are a special form of action brought by a state on behalf of its residents generally to protect a 'quasi-sovereign interest' belonging to the state."); *N. Mex. v. McAleenan*, 450 F. Supp.3d 1130, 1189 n.15 (D. N. Mex. 2020); *Grill v. Philip Morris USA, Inc.*, 653 F. Supp.2d 481, 498 (S.D.N.Y. 2009); *N.Y. ex rel. Spitzer v. Cain*, 418 F. Supp.2d 457, 470 (S.D.N.Y. 2006).

In an apparent last-ditch effort to save its claim, the Opposition argues that the substantiality requirement is alternatively met because "Express Scripts provides PBM services for nearly 40% of Ohioans covered by commercial insurance" and an unspecified portion of these individuals received communications including the same false and deceptive representations allegedly made to Ohio Plan Sponsors.  (Opp'n, ECF No. 88 at PAGEID 2823.) Plaintiff identifies only one such statement—an Express Scripts document explaining that formulary decisions for an Ohio public employee retirement plan are made "in consultation with a team of healthcare providers and that the drugs represent 'the prescription therapies believed to be a necessary part of the quality treatment program.'"  (*Id.* at 2826 (quoting Compl. ¶ 142).) This is not enough.  Just as Plaintiff cannot demonstrate quasi-sovereign interest with vague statements about "secondary benefits [or harms] to the Ohio economy," (Mot., ECF No. 78 at PAGEID 2721 (quoting *GMAC Mortgage*, 760 F. Supp.2d at 751)), Plaintiff cannot rely on

19

vague, conclusory allegations to establish that Express Scripts' alleged false advertising actually injured Ohioans covered by Ohio Plan Sponsors that contract with Express Scripts. *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp.3d 1079, 1096 (S.D. Cal. 2018) ("The Court cannot adjudicate whether Plaintiff has alleged injury to a *significant* proportion of its population because Plaintiff has not alleged facts about any proportion of its population. Rather, Plaintiff states, in conclusory fashion, that its citizens 'have overpaid for Packaged Tuna.'") (emphasis included).

Plaintiff cannot establish a quasi-sovereign interest, nor escape the blackletter law. (*See* Mot., ECF 78 at PAGEID 2719–21) (setting forth authority establishing that the *parents patriae* doctrine is unavailable when state's claims are on behalf of an identifiable group of citizens).)

### C. Rule 9(b)'s Heightened Pleading Standards Apply

Plaintiff contends that its DTPA claim should not be subject to Rule 9(b)'s heightened pleading standard because DTPA claims do not sound in fraud. (Opp'n, ECF No. 88 at PAGEID 2824) (alleging "[a] claim under the DTPA does not sound in fraud").) But Rule 9(b) is not limited only to fraud claims styled as such—it also applies in situations, such as here, where a complaint contains averments of fraud. *Delta Pegasus Mgmt. v. NetJets Sales*, No. 2:22-cv-3519, 2023 WL 2785594, at *2 (S.D. Ohio Feb. 14, 2023) (Watson, J.) (where a non-fraud claim "rest[s] on averments of fraud, the allegations of fraudulent conduct must satisfy Rule 9(b).").

The cases Plaintiff cites stand only for the proposition that a DTPA or Lanham Act false advertising claim *need not* contain allegations of willful and knowing deception to succeed. *See Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958); *Ames Pub. Co. v. Walker-Davis Pubs., Inc.*, 372 F. Supp. 1, 24 (E.D. Pa. 1974). But here, Plaintiff *did* allege that Express Scripts "knowingly and willfully made repeated misrepresentations . . . [and] false statements" regarding the quality of its PBM services and the "price reductions it was securing

on behalf of, and passing on to, Ohio Plan Sponsors." (Compl. ¶¶ 243–44.) As such, Rule 9(b)'s heightened pleading standards apply, which—for the reasons explained in Moving Defendants' Motion, (Mot., ECF No. 78 at PAGEID 2722–23)—Plaintiff's allegations fail to satisfy.

### D. The Complaint Fails to Adequately Allege Misrepresentations that Misled Plan Sponsors

But even if Plaintiff's DTPA allegations did not sound in fraud (and they do), the Federal Rules of Civil Procedure would require the Court to dismiss Count IV of the Complaint. Rule 8 requires that DTPA plaintiffs identify the alleged misstatements in their complaint "with some degree of particularity," in part because courts evaluate statements that are "literally false" differently from those that are "literally true or ambiguous, but ha[ve] the tendency to deceive consumers." (Mot., ECF No. 78 at PAGEID 2722–23.) Critically, for the latter category of statements, because the Lanham Act and DTPA provides a remedy against "unfair competition through misleading advertising or labeling," *POM Wonderful*, 573 U.S. at 107, a DTPA plaintiff must include sufficient allegations indicating that the challenged statements were more than "mere puffery," which the Act does not reach, and that the advertisements "in fact misled a significant number of reasonable consumers." (ECF No. 78 at PAGEID 2723.) Plaintiff cites no such allegations.

In the Opposition, Plaintiff identifies just four "statements" (from 3 of the 260 paragraphs in the Complaint) that supposedly form the basis of its DTPA claim. (Opp'n, ECF No. 88 at PAGEID 2825–26.) Taken together, these statements merely provide that Express Scripts is "here for" its clients, and, with input from healthcare providers, takes clinical considerations into account before cost considerations in designing formularies. (*Id.*) Such vague and general statements concerning Express Scripts' business operations, standing alone, are insufficient— even under Rule 8—to sustain a DTPA claim. (*See* Mot., ECF No. 78 at PAGEID 2722–23

(collecting cases).) Moreover, on their face, it is not plausible that Ohio Plan Sponsors would be deceived by these statements into contracting with Express Scripts over a superior competitor. *Id*. Count IV thus fails.

## IV. Plaintiff Fail to Adequately Plead its Count V Claim

### A. Plaintiff Fails to Plead the Necessary Elements of Ohio R.C. § 3959.20

Plaintiff fails to sufficiently plead the elements of Ohio R.C. § 3959.20, and the Opposition does not establish otherwise. Indeed, the Opposition does not point to any *facts* alleged that would sufficiently establish that Express Scripts, with respect to any pharmacy, *illegally* (i) adjusted claims or (ii) imposed "fees" that were unable to be determined at the time of adjudication. Instead, the Opposition asks the Court to infer illegal conduct from the legal conduct that it pled. Plaintiff points to no *facts* alleged that show a violation (e.g., that the unspecified alleged clawbacks on unspecified pharmacies were other than the result of an audit or technical billing error); rather than facts, the Opposition points to conclusions. Moreover, the Opposition points to no *facts* that would—if credited—establish that the alleged clawbacks constitute a "fee" in contravention of § 3959.20. Again, the Court is left with conclusions.

Plaintiff also fails to sufficiently allege *facts* to support a conclusion that any claims were adjusted in violation of § 3959.20. The Opposition only points to Plaintiff's allegations concerning unspecified "clawbacks" imposed on unspecified pharmacies and related to unspecified "specific claims." (Opp'n, ECF No. 88 at PAGEID 2827.) Nowhere do these allegations specify the *particular* claims (or types of claims) that were adjusted by Express Scripts for any *particular* retail pharmacy (or type of pharmacy), much less facts that would show such actions were illegal. (Mot., ECF No. 78 at PAGEID 2724–25.) Plaintiff's entirely conclusory allegations, equally consistent with legal conduct, are insufficient to support a § 3959.20 claim. *See, e.g.*, *Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018) ("Legal

22

conclusions, 'formulaic recitations' of the claim's elements, and 'naked assertions' of liability are all insufficient" to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 557).

### B. Plaintiff Failed to Allege the Elements for a Permanent Injunction

Plaintiff is incorrect that it was not required to set forth the required elements for a permanent injunction in Count V—namely, irreparable injury, no adequate remedy at law, and balance of hardships and public interest considerations weighing in favor of injunctive relief. But when a request for permanent injunction is contained within a claim, as it is here, those elements must be plausibly alleged within the claim. (Mot., ECF No. 78 at PAGEID 2725–26); *see also Wade v. Franklin Cty.*, No. 2:23-cv-305, 2022 WL 142332, at *3 (S.D. Ohio Jan. 17, 2022) (dismissing claim for injunctive relief for failure to sufficiently allege necessary factors). Plaintiff concedes that it did not allege these elements, (Opp'n, ECF No. 88 at PAGEID 2828), and thus, Count V must be dismissed.

## V. Plaintiff Insufficiently Pled Its Count VI Claim for Unjust Enrichment

The Opposition does not cure the fact that Plaintiff failed to sufficiently plead the necessary elements for an unjust enrichment claim: namely, "(1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *MVB Mortg. Corp. v. F.D.I.C.*, No. 2:08-cv-771, 2010 WL 654051, at *3 (S.D. Ohio Feb. 19, 2010).

As explained in the Motion and unremedied in the Opposition, Plaintiff fails to plausibly allege any benefit conferred by Ohio consumers upon the Moving Defendants, as Plaintiff is pursuing its unjust enrichment claim on behalf of indirect purchasers. To get over the indirect purchaser hurdle, Plaintiff erroneously asserts that unjust enrichment claims do not require a "direct buyer-seller relationship." (Opp'n, ECF No. 88 at PAGEID 2829.) But in *Johnson v.*

*Microsoft Corp.*, the Ohio Supreme Court established that indirect purchasers, such as those on whose behalf Plaintiff brings Count VI, may not pursue unjust enrichment claims.  834 N.E.2d at 799 (affirming dismissal of unjust enrichment claim).

In trying to undermine *Johnson*, Plaintiff cites *Ohio Edison Co. v. Direct Energy Bus.*, which not only is consistent with *Johnson*, but also distinguishes Plaintiff's citation to *Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812 (N.D. Ohio 2006), explaining that any indirect purchaser exception to unjust enrichment claims found in *Randleman* was "limited" to the mortgage lending fact pattern not applicable here.  No. 5:17-cv-746, 2017 WL 3174347, at *4 (N.D. Ohio July 26, 2017) (dismissing unjust enrichment claim where "no economic transaction exists.").  The Court in *Randleman* also acknowledged this distinction, explaining that "unlike *Johnson,* this case presents no antitrust claims, and thus no potential for misuse of the unjust enrichment claim to undercut antitrust doctrine or rulings."[14]  465 F. Supp. 2d at 825.

Plaintiff also argues, without authority, that it is not subject to the rule in *Johnson* because "[u]njust enrichment is an equitable claim . . . and the State of Ohio brings this claim in its capacity as *parens patriae*."  (Opp'n, ECF No. 88 at PAGEID 2829.)  But just as the state concedes with respect to its Valentine Act claims, it is using its *parens patriae* authority to seek relief on behalf of indirect purchasers, (supra Part I), and thus, is subject to the indirect purchaser bar on pursuing unjust enrichment claims.  (Mot., ECF No. 78 at PAGEID 2706.)  That unjust

---

[14] Moreover, in both *Randleman* and *Paikai v. Gen. Motors*, another case cited by the Opposition, (Opp'n, ECF No. 88 at PAGEID 2929), the courts also determined that the plaintiff plausibly alleged a "transactional nexus" between plaintiffs and defendants, *Randleman*, 465 F. Supp. at 825, or a "tie of causation between the plaintiff's loss and the defendant's benefit," *Paikai v. Gen. Motors Corp.*, No. 07-cv-892, 2009 WL 275761, at *5 (E.D. Cal. Feb. 5, 2009)), neither of which Plaintiff's Complaint alleges here.

24

enrichment may be an equitable claim does not change this analysis, and Plaintiff cites no authority supporting that view. *Cf. Johnson*, 834 N.E.2d at 799.

The Opposition is also incorrect that the Complaint sufficiently alleges that the Moving Defendants had knowledge of and retained the purported benefit. (Opp'n, ECF No. 88 at PAGEID 2830.) This cannot be true because, without any alleged payments from consumers to Moving Defendants, there necessarily can be no knowledge and no retention of such payments. (Mot., ECF No. 78 at PAGEID 2727.) Accordingly, Plaintiff's unjust enrichment claim does not sufficiently plead any of the necessary elements.

## VI. Count VII Fails for the Same Reasons as Count I and III

Plaintiff relies on its failed Count I and III "price-fixing conspiracy" allegations to assert it pled a civil conspiracy claim. (Opp'n, ECF No. 88 at PAGEID 2830–31.) But Count VII fails alongside Count I and III for the reasons explained above, (*see* supra Parts I-II).

## VII. Plaintiff Has Not Pled Any Connection Between Cigna and Evernorth and the Complaint, Necessitating Their Dismissal

As summarized above, (supra Part I.C), Plaintiff's attempts to rewrite Cigna and Evernorth into the Complaint fail.[15] Plaintiff does not, and cannot, explain how the Complaint's allegations implicate Cigna and Evernorth beyond their corporate relationship to Express Scripts. (Supra Part I.C); *see also* Mot., ECF No. 78 at PAGEID 2729–30.) Lacking any alleged connection to the case beyond ownership of Express Scripts, Cigna and Evernorth should be dismissed from this action. (Mot., ECF No. 78 at *id.*)

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

---

[15] In fact, the Opposition further separates Cigna and Evernorth from the Complaint by alleging Plaintiff intended to plead a relevant market in which neither Cigna nor Evernorth participate— that is, "the market for PBM services." (Opp'n, ECF No. 88 at PAGEID 2810 (bucketing only Express Scripts in Plaintiff's newly alleged market).)

Dated:  December 1, 2023

RULE GARZA HOWLEY LLP

Charles F. Rule*
Daniel J. Howley*
Emily M. Renzelli*
Benjamin Z. Bergmann*
Erica N. Baum*
1701 Pennsylvania Ave. NW, Suite 200
Washington, D.C. 20006
Telephone: (202) 843-9280
rule@rulegarza.com
howley@rulegarza.com
renzelli@rulegarza.com
bergmann@rulegarza.com
baum@rulegarza.com

*Admitted *pro hac vice*

*Counsel for Ascent Health Services LLC, Express Scripts, Inc., The Cigna Group, and Evernorth Health, Inc.*

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

*/s/ David J. Butler*
David J. Butler (0068455), Trial Attorney
41 South High Street, Suite 1800
Columbus, Ohio 43215
Telephone: (614) 221-2838
dbutler@taftlaw.com

Jeanne M. Cors (0070660)
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
cors@taftlaw.com

## <u>CERTFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 1, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system.  Parties may access this filing through the Court's system.

<u>/s/ David J. Butler</u>
David J. Butler (0068455)